Michael R. BURCH et ux., Petitioners,

v.

CITY OF SAN ANTONIO et al., Respondents.

No. B–4676.

Supreme Court of Texas.

Jan. 29, 1975.

Rehearing Denied March 5, 1975.

William H. Robison, San Antonio, Hart, Keahey & Hart, James P. Hart, Austin, for petitioners.

Crawford R. Reeder, City Atty., Sawtelle, Goode, Davidson & Troilo, John W. Davidson and Marquis E. Whittington, San Antonio, for respondents.

DENTON, Justice.

Plaintiffs, Michael R. Burch and his wife, appealed from an order of a district court in Bexar County denying their application for a temporary injunction to restrain further proceedings in a condemnation suit which has been brought by the City of San Antonio, acting through its Water Works Board of Trustees, that sought to obtain the fee simple title to land owned by the plaintiffs. The court of civil appeals affirmed the district court's action and thereby recognized the authority of the Board to exercise the power of eminent domain for the purposes of making extensions, improvements and additions to the city water system. 508 S.W.2d 653. We reverse and remand.

The San Antonio Water Supply Company, a private corporation, was purchased by the City of San Antonio in 1925 under the provisions of Art. 1109 (1963), Tex. Rev.Civ.Stat.Ann.[1] The legislature had further provided that the management and control of such a water supply system was to be placed in the hands of the city council of the city, or alternatively, if the city

1. All statutory references are to Vernon's Annotated Texas Civil Statutes.

council and the voters deemed it advisable, the management and control could be delegated to a board of trustees when bonds and notes used to finance the purchase or operation of the water system remained unpaid. Art. 1109a, § 4. The City, operating under this latter statute, decided that its water system would be governed under the alternate method and entered into a trust agreement, placing into the hands of its Water Works Board of Trustees the operation of the system.

In 1957, the City issued some $2 million in water revenue refunding bonds which were secured by a pledge of the system's revenues. Ordinance No. 24819, which authorized the issuance of the refunding bonds, again placed the management and control of the system in a board of trustees for so long as any bonds remained outstanding. Under the provisions of the ordinance the Board was given:

> absolute and complete authority and power with reference to the control, management and operation of the System and the expenditure and application of the revenues of the System . . . In connection with the management and operation of the System and the expenditure and application of the revenues therefrom, the Board of Trustees shall be vested with all of the powers of the City with respect thereto, including all powers necessary or appropriate for the performance of all the covenants, undertakings and agreements of the City contained in this Ordinance . . . with the exception of fixing rates and charges for service . . . and, to the extent authorized by law and by this Ordinance, shall have full authority with reference to making of extensions, improvements and additions to the System and the acquiring by purchase or condemnation of properties of every kind in connection therewith.

The City has from time to time issued additional revenue bonds including those that would finance the acquisition of the

Burch's property, however, all are subject to the above grant of authority in that the pertinent provisions of Ordinance No. 24819 have been adopted by reference in the subsequent ordinances issuing revenue bonds.

The plaintiffs contend that this attempted delegation of the power of eminent domain by the city council was in contravention to Art. 1109, § 5 and Art. 1109b.

These statutes, dealing with the powers of eminent domain conferred by the legislature upon incorporated cities and towns who own their water supply system, are construed by the plaintiffs and the court of civil appeals opinion below as investing these powers in the legislative or governing body of the cities and not to subordinate municipal boards or officials. Since it is undisputed that the Board has been the only agency of the City that has determined the necessity for the taking of a fee simple interest in the plaintiffs' land, thereafter authorizing the institution of condemnation proceedings, the plaintiffs contend that such proceedings are void because the City's legislative body, the city council, should have made the pertinent determinations.

■ We agree that the terms "governing body" or "governing authority" as spoken to in the statutes cited by plaintiffs refer to that body which exercises the legislative powers within the City. Under Art. 23, the term "governing body" is defined as

> the governing or legislative body of any incorporated town, city or village, whether known as a council, commission, board of commissions, common council, board of aldermen, city council, or by whatever name such bodies may be known or designated.

Therefore, this body, commonly referred to as the "city council" would be the particular agency within the city government to

have initiated the action on the condemnation of the Burch's property.

Notwithstanding the contention by plaintiffs that the power of eminent domain has been vested only with the city council by virtue of the above mentioned statutes, the City argues that article 1109a, which allows cities to place the management and control of encumbered water systems in a board of trustees, by necessary implication authorized the city council to delegate the power of eminent domain to the Board. The City therefore contends that Ordinance No. 24819, which sought to effect such a delegation, is not in contravention to any statute.

A reading of article 1109a, section 4 which is entitled "Management During Encumbrance" discloses that the organization and duties of the board of trustees may be specified in the contract of encumbrance along with a few examples of such duties being cited in the act. There is no mention of conferring the power of eminent domain upon the board of trustees when a city council and voters choose to operate the city water system through such an entity. The City here argues, however, that *all* powers necessary or desirable for control and management of the water system were spoken to in article 1109a and that the manifest purpose of the act was to provide for the removal of the operation of the water system entirely from the influence and control of the city government and to free it from political control or manipulation.

■ At this juncture it should be noted that the citizens of San Antonio have elected to govern themselves under the provisions of the Home Rule Amendment to the Texas Constitution, Article XI, Section 5, Vernon's Ann.St. A city which operates under the Home Rule Amendment is empowered to adopt or amend its charter in any manner in which it may desire, consistent and in accordance with the state constitution and the general laws of this State. Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948); Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033 (1934); City of Denton v. Denton Home Ice Co., 119 Tex. 193, 27 S.W.2d 119 (1930); see Tex.Const. Art. XI, § 5; Art. 1165. As a home rule city then, San Antonio is not required to look to the legislature for a grant of power to act, but only to ascertain if the legislature has placed any limitations on the city's constitutional power. State ex rel. Rose v. City of La Porte, 386 S.W.2d 782 (Tex.1965); Forwood v. City of Taylor, *supra*; City of El Paso v. State ex rel. Town of Ascarate, 209 S.W.2d 989 (Tex.Civ.App.1947, writ ref'd); Yellow Cab Transit Co. v. Tuck, 115 S.W.2d 455 (Tex.Civ.App.1938, writ ref'd).

The pertinent inquiry therefore is whether the City of San Antonio, having all powers not denied to it by the Texas Constitution and the general laws of this State, has the power to delegate its constitutional grant of the power of eminent domain to the Water Works Board of Trustees. Determinative of this question will be an examination of several general laws enacted by the legislature directed towards implementation of the power of eminent domain by cities and towns within Texas.

■ Since the enabling act to the Home Rule Amendment, including article 1175, is a general law within the meaning of that amendment, city charter provisions and ordinances may not be inconsistent with the terms of the statute. Article 1175 provides under section 15 that home rule cities "have the power to appropriate private property for public purposes whenever the *governing authorities* shall deem it necessary . . . ."[2] The statute goes on to state that "[t]he power of eminent do-

2. Emphasis added throughout.

main hereby conferred shall include the right of the *governing authority*, when so expressed to take the fee in the lands so condemned . . . ." In situations involving city-owned water works systems, there are two more instances of legislative action as regards the implementation of the power of eminent domain. Article 1109, section 5 states that

Any such city may acquire the fee simple title to any land or property when same is *expressed in the resolution ordering said condemnation proceedings by the governing body.*

Additionally, article 1109b, entitled "Eminent Domain" states that "Incorporated cities and towns shall have the power to appropriate private property for public purposes whenever the *governing authorities* shall deem it necessary". Through these statutes the legislature appears to have limited the constitutional grant to home rule cities of the power of eminent domain to instances where the "governing body" or the city council has *itself* acted to condemn private property for public purposes. In addition to the specific mention of requiring action by the city council, these statutes, as all statutes implementing the power of eminent domain, are to be strictly construed. 1 P. Nichols, Law of Eminent Domain § 3.213[3] (3d rev. ed. 1973). These statutes, therefore, require that we hold that the delegation of management and control of the water works system to the Board under article 1109a does not give the City authority to delegate the exercise of the power of eminent domain to the Water Works Board. The Board can surely offer able advice and counsel to the City on matters of this nature, as would a city engineer or member of a city planning board, but the specific steps to be taken when condemnation of private property is sought must be accomplished by the city council.

The City further contends that if Ordinance No. 24819 was ineffective because the delegation of the power of eminent domain therein was not authorized by article 1109a, the ordinance nevertheless is controlling here because any defects were cured by a subsequent validation statute— Art. 1174a–8. This contention was the basis for the holding of the court of civil appeals which concluded that the Board was the appropriate body to make the final determination concerning the condemnation of the Burch's property. The language in article 1174a–8 that was relied upon by the lower court is found in section 3 of that act:

All governmental proceedings of home rule cities, save and except those relating to annexation of territory, are hereby ratified and confirmed and all actions of the governing bodies of home rule cities in calling and holding elections for bonds and in the authorization, issuance and delivery of bonds, warrants, scrip, and certificates of indebtedness or of assessment are hereby ratified and confirmed and said obligations shall have effect according to their purport and tenor.

■■■ It is well settled that the legislature has the power to enact curative or remedial legislation. Anderson County Road District No. 8 v. Pollard, 116 Tex. 547, 296 S.W. 1062 (1927). If a statute is curative or remedial in its nature the rule is generally applied that it be given the most comprehensive and liberal construction possible. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951); 2 Sutherland Statutory Construction § 41.11 (4th ed. C. Sands 1973). This statute, however, deals with the ratification of elections for bonds and the authorization and issuance of the indebtedness and makes no reference whatsoever to the ratification and confirmation of the power of eminent domain in subordinate agencies of home rule cities. Such power must be conferred by the legislature, either expressly or by necessary implication, and will not be construed from doubtful inferences.

Coastal States Gas Producing Co. v. Pate, 158 Tex. 171, 309 S.W.2d 828 (1958). In construing statutes that delegate the power of eminent domain, the language used by the legislature may be accorded a full meaning so as to carry out the manifest purpose and intention of the statute, however, the application of the law will be restricted to only those cases clearly falling within its terms. Coastal States Gas Producing Co. v. Pate, *supra*. These rules of construction must also be considered in conjunction with the overriding policy that because the exercise of the power of eminent domain is in derogation of the rights of the citizen that statutes conferring such power are strictly construed in favor of the landowner and against those corporations and subdivisions of the State vested therewith. City of Houston v. Derby, 215 S.W.2d 690 (Tex.Civ.App.1948, writ ref'd); 3 Sutherland Statutory Construction § 65.02 (4th ed. C. Sands 1974); 26 Am.Jur.2d Eminent Domain § 18 (1966).

 The delegation of the power of eminent domain by the City must be strictly controlled in view of its effect on the rights of the individual citizen. We therefore hold that home rule cities are not given the authority to delegate the power of eminent domain to subordinate agencies in view of the limitations of article 1175, section 15, and articles 1109 and 1109b. Additionally, the retroactive validating statute relied upon by the City does not touch upon the delegation of the power of eminent domain by the city council and we hold that no such authority is conferred thereby. Accordingly, the city council is the authority to exercise the power of eminent domain and must itself officially express the intention and necessity to condemn the land in question for the City's water system.

The judgments of the courts below are therefore reversed and the cause remanded to the trial court for further proceedings in accordance with this opinion.