**LOWER COLORADO RIVER AUTHORITY,**
Petitioner,

v.

**CITY OF SAN MARCOS, Texas,**
Respondent.

No. B–4663.

Supreme Court of Texas.

May 7, 1975.

Small, Craig & Werkenthin, C. C. Small, Jr. and Lawrence S. Smith, Austin, for petitioner.

McGinnis, Lochridge & Kilgore, James W. Wilson, Austin, for respondent.

WALKER, Justice.

The opinion delivered in this case on December 11, 1974, is withdrawn, and the following is substituted therefor:

This suit was brought by the City of San Marcos against the Lower Colorado River Authority to obtain: (1) a judgment declaring that San Marcos has power to regulate the rates charged by LCRA for the sale of electricity at retail within the city limits and that resolutions of LCRA's Board of Directors increasing rates were void for noncompliance with the open meeting law, Art. 6252–17,[1] and (2) for an injunction restraining LCRA from collecting rates in excess of those authorized by San Marcos. LCRA counterclaimed for declaratory relief to the contrary and an adjudication that the City's rate ordinance was void for lack of notice to LCRA.

The trial court entered judgment declaring that San Marcos has no jurisdiction over rates charged by LCRA for the sale of electricity, that the City's rate ordinance is void, and that rate increases ordered by LCRA in 1972 and 1973 are invalid. Both parties perfected appeals, although San Marcos did not complain of the trial court's action in holding its rate ordinance invalid. The Court of Civil Appeals: (1) reversed the trial court's judgment with respect to the regulatory jurisdiction of San Marcos and rendered judgment that San Marcos has exclusive power, after no-

---

1. All statutes are referred to by the article number under which they appear in Vernon's Ann. Tex.Civ.Stat.

tice and hearing, to regulate by ordinance LCRA's rates for electricity sold within the city limits; and (2) affirmed the trial court's judgment in all other respects. Tex.Civ.App., 508 S.W.2d 403. We modify the judgment of the Court of Civil Appeals to declare that the 1973 rate increase ordered by the LCRA is not invalid, and as so modified the judgment of the Court of Civil Appeals is affirmed.

All of the material facts were stipulated in the trial court. San Marcos is a municipal corporation located in Hays County, and is incorporated as a home rule city under Article XI, Section 5, of the Texas Constitution, Vernon's Ann.St. The city charter expressly authorizes the City Council to regulate by ordinance the rates of every public utility operating in the city. LCRA was created by Article 8280–107 as a conservation and reclamation district under the authority of Article XVI, Section 59, of the Texas Constitution. It is authorized to develop and generate water power and electric energy within its boundaries and to distribute and sell the same within and without its boundaries. San Marcos and Hays County are not within the boundaries of LCRA. In 1939 LCRA acquired from Texas Power & Light Company the electrical distribution system serving the residents of San Marcos, including a 50-year franchise granted by the City in 1925. The system is now operated by LCRA under a 10-year franchise granted by the City in 1967.

Prior to 1972 San Marcos made no attempt to regulate rates charged by LCRA for electric service, but it has from time to time claimed regulatory jurisdiction over rates. LCRA has consistently denied that San Marcos has any power with respect to rates, and there has been a continuing controversy between the parties on that question. On October 19, 1972, the LCRA Board of Directors adopted a resolution substantially increasing its retail electric rates, including those charged in San Marcos, effective with the first monthly billing

period after January 1, 1973. On December 15, 1972, the City Council passed on first reading an ordinance regulating electrical rates in the city. The rates prescribed by the ordinance are those that were being charged in San Marcos at that time. The ordinance was finally adopted on December 19, 1972, and LCRA was notified the following day. LCRA made no reply but put its increased rates into effect in January, and this action was brought shortly thereafter.

The brief of LCRA in the Court of Civil Appeals refers to "the power claimed by San Marcos under § 12 of Article 1175." It argued that the words "person, firm or corporation" as used in the statute do not embrace a municipal corporation such as LCRA, and that the statute does not contemplate regulation of rates charged by a governmental agency. This was treated by the Court of Civil Appeals as an "implied limitation" argument, and with good reason since Article 1175 could have no other bearing on the case. The intermediate court concluded that Subdivision 12 of Article 1175 simply makes clear the constitutional power of home rule cities to regulate the rates of all utilities, including LCRA, rendering service to their inhabitants. We do not attempt to explore that question, because LCRA now recognizes, and properly so, that "any construction of Article 1175 is immaterial" in the present case.

A home rule city derives its power not from the Legislature but from Article XI, Section 5, of the Texas Constitution. Accepting cities and towns of more than 5,000 population have "full power of self-government, that is, full authority to do anything the legislature could theretofore have authorized them to do. The result is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers." Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282. Where Article 1175 indicates that a power is to be exercised by the "governing au-

thority" or specifies the procedure to be followed, the statutory provisions may be regarded, in some instances at least, as limitations on the power of the city to delegate the power to other officials or act in any other manner. See Burch v. City of San Antonio, Tex.Sup., 518 S.W.2d 540. In view of the explicit provisions of Article 1176, however, the enumeration of powers in Article 1175 may never be construed as an implied limitation on the exercise by a home rule city of all powers incident to the enjoyment of local self-government.

■ The powers of home rule cities are subject to and may be limited only by their charters or by the Constitution or by general law. In this instance there is no limitation in either the Constitution or the charter, and the parties agree that the case turns on whether Section 8 of the LCRA Act, Article 8280–107, constitutes a legislative limitation upon the power of San Marcos as a home rule city with respect to LCRA rates. Section 8 of the Act provides as follows:

Sec. 8. The Board shall establish and collect rates and other charges for the sale or use of water, water connections, power, electric energy or other services sold, furnished, or supplied by the District which fees and charges shall be reasonable and nondiscriminatory and sufficient to produce revenues adequate;

(a) to pay all expenses necessary to the operation and maintenance of the properties and facilities of the District;

(b) to pay the interest on and principal of all bonds issued under this Act when and as the same shall become due and payable;

(c) to pay all sinking fund and/or reserve fund payments agreed to be made in respect of any such bonds, and payable out of such revenues, when and as the same shall become due and payable; and

(d) to fulfill the terms of any agreements made with the holders of such bonds and/or with any person in their behalf.

Out of the revenues which may be received in excess of those required for the purposes specified in subparagraphs (a), (b), (c) and (d) above, the Board may in its discretion establish a reasonable depreciation and emergency fund, or retire (by purchase and cancellation or redemption) bonds issued under this Act, or apply the same to any corporate purpose.

It is the intention of this Act that the rates and charges of the District shall not be in excess of what may be necessary to fulfill the obligations imposed upon it by this Act. Nothing herein shall be construed as depriving the State of Texas of its power to regulate and control fees and/or charges to be collected for the use of water, water connections, power, electric energy, or other service, provided that the State of Texas does hereby pledge to and agree with the purchasers and successive holders of the bonds issued hereunder that the State will not limit or alter the power hereby vested in the District to establish and collect such fees and charges as will produce revenues sufficient to pay the items specified in subparagraphs (a), (b), (c) and (d) of this Section 8, or in any way to impair the rights or remedies of the holders of the bonds, or of any person in their behalf, until the bonds, together with the interest thereon, with interest on unpaid installments of interest and all costs and expenses in connection with any action or proceedings by or on behalf of the bondholders and all other obligations of the District in connection with such bonds are fully met and discharged.

LCRA emphasizes: (1) the provision that the Board shall establish and collect rates and other charges for the sale or use

of electric energy supplied by the District, and (2) the statutory pledge that the State will not limit or alter the power vested in the District to establish and collect such fees and charges as will produce revenue sufficient to pay the items specified in subparagraphs (a), (b), (c) and (d) of Section 8 or in any way to impair the rights or remedies of bondholders. LCRA then argues that in view of these provisions and under our holding in Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S. W.2d 629, it is clear that the Legislature intended to withdraw from home rule cities power to regulate rates charged by LCRA for the sale of electric energy within the city limits. We do not agree.

A limitation on the power of home rule cities by general law or by charter may be either an express limitation or one arising by implication. "Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end." Glass v. Smith, 150 Tex. 632, 244 S.W.2d 645. The intention of the Legislature to impose such limitations must "appear with unmistakable clarity." City of Sweetwater v. Geron, Tex.Sup., 380 S.W. 2d 550. The statute here: (1) authorizes the Board to establish and collect rates and other charges; (2) provides that *nothing therein* shall be construed to deprive the State of its power to regulate rates and charges; and (3) further provides that the power reserved to the State will not be exercised in such manner as to impair the rights and remedies of bondholders or deprive LCRA of the right to fix and collect such fees and charges as will produce revenue sufficient to meet certain specified obligations.

The decision in Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629, is not helpful here. The question there was not whether LCRA was exempt from rate regulation but whether there was unlawful delegation of power to the Board. In our opinion the statute means precisely what it says, i.e., that the LCRA Board will establish rates and charges in the first instance, that its action in that respect is subject at all times to the power of regulation reserved to the State, and that this reserved power will not be exercised in a manner that will prejudice bondholders or prevent the collection of revenues required for the purposes designated in the four subparagraphs. The proviso is the only express limitation on the power of home rule cities to regulate rates charged by LCRA for service to customers within their corporate limits, and no additional limitation is clearly compelled or even warranted by the provisions of the statute. The Legislature reserved to the State power to regulate LCRA rates subject only to the terms of the proviso, and this reserved power may be exercised by San Marcos with respect to rates for electricity sold within the city limits.

The present case is thus somewhat similar to Trinity River Authority v. Texas Water Rights Commission, Tex.Civ.App., 481 S.W.2d 192 (wr. ref. n.r.e.). The original 1955 statute creating the Trinity River Authority provided that nothing therein would impair the authority granted to the State Board of Water Engineers under the general laws to prescribe rates governing the sale of surface water by or to the Authority. It further provided that where revenue bonds were outstanding, the Board of Directors were under the duty to fix rates and charges for sales and services sufficient to pay expenses, meet bond maturities, and comply with the resolution authorizing, and the trust indenture securing, the bonds. The statute was amended in 1969 to authorize acquisition of the "Devers Canal System" but with the requirement that only revenue bonds be used for that purpose. It was contended by the Authority and its bondholders that the Texas Water Rights Commission, successor to the Board of Water Engineers, had no power to fix rates charged by the Authority on the Devers system. The court concluded that the Legislature had established

"a regulatory scheme in which two rate making bodies have serial jurisdiction." It observed that under Article 7560 et seq. the Commission was authorized to fix reasonable rates for furnishing of water on petition by anyone served by a water improvement or irrigation district. Nothing was in the original statute creating the Authority or in the subsequent amendments conflicting or inconsistent with the regulatory power of the Commission, and it was accordingly held that water rates fixed by the Authority were subject to revision by the Commission on petition by the Authority's customers.

There is no essential conflict or inconsistency in the scheme of regulation provided by the Lower Colorado River Authority Act. In the absence of a valid rate ordinance adopted by San Marcos, the LCRA Board will continue to set rates as in the past. If and when San Marcos wishes to adopt a rate ordinance, it will notify LCRA, give due consideration to the rates fixed or requested by the LCRA Board of Directors, and prescribe rates determined to be proper under the circumstances. If San Marcos should exercise its power in a manner that violates the proviso in Section 8 of Article 8280–107, the ordinance will be subject to attack in the courts just as an ordinance regulating the rates of a private utility may be attacked on the ground that it is confiscatory or does not provide a reasonable return.

San Marcos has not complained of the trial court's holding that its rate ordinance of December 19, 1972, is void for lack of notice to LCRA, and that question will not be considered. LCRA does complain of the holding that its 1972 and 1973 attempts to increase rates were ineffectual. The first effort to increase rates was made at a meeting of the Board of Directors on October 19, 1972. The notice of that meeting made no reference to rates. Another meeting was held on May 24, 1973, the day the present case went to trial, and the notice of this meeting concluded with a state-ment that the Board would consider other matters concerning the Authority's operations "including the ratification of the prior action of the Board taken on October 19, 1972, in response [sic] to changes in electric power rates for electric power sold within the boundaries of the City of San Marcos, Texas." Two resolutions adopted by the LCRA Board at the 1973 meeting purported to: (1) ratify, confirm and readopt "all actions heretofore taken by the Board on October 19, 1972, with respect to rates for the sale of electricity at retail"; and (2) order that, in the event it should be determined by any court of competent jurisdiction that the action of the Board at the earlier meeting was ineffective for any reason, the same rate increases be adopted with the changes to be effective June 1, 1973.

 The notice of the 1972 meeting did not comply with the open meeting law, Art. 6252–17, § 3A, in so far as the subject of rates is concerned, and the trial court properly held invalid the action of the Board at that meeting purporting to increase rates. We approve the holding in Toyah Ind. Sch. Dist. v. Pecos-Barstow Ind. Sch. Dist., Tex.Civ.App., 466 S.W.2d 377 (no writ), that a violation of the open meeting law subjects the action taken to judicial invalidation.

 The notice of the 1973 meeting is not as clear as it might be, but it would alert a reader to the fact that some action would be considered with respect to charges for electric power sold in San Marcos. In our opinion the notice was sufficient to comply with the statute. The attempted ratification of the action taken at the 1972 meeting was ineffective, however, for two reasons. In the first place, the purported ratification cannot be given retrospective operation to increase rates for power sold before the 1973 meeting. See Railroad Commission v. Houston Natural Gas Corp., 155 Tex. 502, 289 S.W.2d 559; Texas Natural Gas Utilities v. City of El Campo, Tex.Civ.App., 135 S.W.2d

133; Amarillo Gas Co. v. City of Amarillo, Tex.Civ.App., 208 S.W. 239 (no writ). In the second place, it has now been finally determined by a court of competent jurisdiction that the action taken at the 1972 meeting was ineffective, and the LCRA Board ordered that in such event the rate increases would become effective on June 1, 1973. We hold that the ratification resolution adopted at the 1973 meeting had no legal effect but that the rate increases ordered at that meeting to become effective on June 1, 1973, were not invalid for want of compliance with the open meeting law.

Respondent's motion for rehearing is granted, and the judgment rendered in this cause on December 11, 1974, is set aside. The judgment of the Court of Civil Appeals is modified to declare that the rate increases adopted at the 1973 meeting of the LCRA Board and effective June 1, 1973, are not invalid for failure to comply with Art. 6252–17, Vernon's Ann.Civ.Stat., and as so modified the judgment of the Court of Civil Appeals is affirmed.

McGEE, Justice (dissenting).

I respectfully dissent. I cannot agree with the court's holding that the LCRA Act is not a legislative limitation upon the power of San Marcos, as a home rule city, to regulate the utility rates charged to its residents.

Section 5 of Article XI of the Texas Constitution, the Home Rule Amendment, provides:

"Cities having more than five thousand (5,000) inhabitants may . . . adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that *no charter or any ordinance passed under said charter shall contain any provision inconsistent with . . . the general laws enacted by the Legislature of this State; . . . "* [Emphasis added].

As expansive as the power of a home rule city may be in the absence of legislation, it is clear that the legislature can always limit or withdraw that power by general law. City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202 (1927); Dry v. Davidson, 115 S.W.2d 689 (Tex.Civ.App.—Galveston 1938, writ ref'd); City of Baytown v. Angel, 469 S.W.2d 923 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.). It is not necessary that the general law expressly withdraw the power from the home rule city; it is sufficient if the provisions of the general law are *inconsistent* with the power remaining in the home rule city. Burch v. City of San Antonio, 518 S.W.2d 540 (Tex.1975); Berry v. City of Fort Worth, 132 Tex. 599, 124 S.W.2d 842 (1939); City of Fort Worth v. McDonald, 293 S.W.2d 256 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n. r. e.).

Contrary to the conclusion of the court of civil appeals below, this court has expressly held that the LCRA Act is a general law since it operates upon a subject in which the state at large is interested. Lower Colorado River Authority v. McCraw, 125 Tex. 268, 279–280, 83 S.W.2d 629, 636 (1935). The majority opinion does not suggest otherwise. Therefore, the City of San Marcos cannot possess any power inconsistent with the LCRA Act.

As the court notes, Section 8 of the LCRA Act expressly provides that the LCRA Board of Directors "shall establish and collect rates and other charges for the sale of . . . electric energy . . . ." The court interprets the power to "establish" rates narrowly and concludes that such power does not conflict with San Marcos' power to "regulate" rates. However, the court ignores the fact that the LCRA is also expressly given the power to "collect" the rates which it has established. Surely when the legislature empowered the LCRA to "establish and collect rates," it gave the LCRA more power than merely to initially suggest rates which San Marcos may accept or reject. This broad grant of power to the LCRA seems to me to be clearly inconsistent with San Marcos' re-

taining the right to regulate LCRA rates. The same constitutional provision under which San Marcos derives its general powers to legislate expressly forbids any such action which is "inconsistent with . . . the general laws enacted by the Legislature of this State."

The court relies on the proviso that "[n]othing herein shall be construed as depriving the State of Texas of its power to regulate and control fees and/or charges . . . " and reasons that since the state reserves the right to regulate rates and since home rule cities can exercise any legislative power not forbidden them, the effect of the proviso is to reserve regulatory power to the home rule cities. This reasoning does not take into account the "well settled rule that statutes are always held to operate prospectively, unless a contrary construction is evidently required by their plain and unequivocal language." Piedmont & Arlington Life Ins. Co. v. Ray, 50 Tex. 511, 519 (1878); Government Personnel Mut. Life Ins. Co. v. Wear, 151 Tex. 454, 461, 251 S.W.2d 525, 529 (1952). Finding no language in the LCRA Act indicating a legislative intent that the proviso operate retrospectively, I would follow the above rule and hold that it operates prospectively only. Thus, the legislature may, in the future, invoke its reserved power to regulate LCRA rates and either exercise that power itself or delegate that power to any appropriate agency. But until the legislature chooses to activate that reserved power, I find nothing in the proviso indicating an intent to restrict the LCRA's express power to "establish and collect rates." Further, the proviso, which reserves to *the State of Texas* the power to regulate and control LCRA rates and charges, in itself negates the court's construction that it effectively reserves that power to the home rule cities served by the LCRA. The reservation is to the state and any assumption of such power by the City of San Marcos is inconsistent with such reservation to the state.

There is a further reason why I feel that the legislature did not intend for LCRA rates to be regulated by home rule cities. That is the additional proviso in Section 8 of the LCRA Act that:

" . . . the State of Texas does hereby pledge to and agree with the purchasers and successive holders of the bonds issued hereunder that the State will not limit or alter the power hereby vested in the District to establish and collect such fees and charges as will produce revenues sufficient to pay [all operating expenses and the interest and principal of all bonds issued]."

We held in Lower Colorado River Authority v. McCraw, supra, that this pledge is a valid method of promoting the marketability of LCRA bonds. The court says that if San Marcos refuses to approve rates sufficient to raise the revenue necessary to keep this pledge "the ordinance will be subject to attack in the courts just as an ordinance regulating the rates of a private utility may be attacked on the ground that it is confiscatory or does not provide a reasonable return." It is a well known fact in the commercial world that a prospective bond purchaser is not anxious to buy a potential lawsuit. The court's construction of Section 8 defeats the very purpose for the legislative pledge and ignores the essential difference between a private utility, which should be regulated since it operates for profit, and the LCRA, which, no less than a home rule city, exists to serve the public and can charge rates no higher than necessary to pay operating costs and retire indebtedness. It raises the unwelcome possibility of the LCRA collecting widely divergent rates for identical service in different cities and incurring additional expenses, with corresponding utility rate increases, in its attempts to justify its rates to various city councils and maintain a revenue level sufficient to fulfill the statutory pledge to bondholders. Again, I cannot believe the legislature intended this result

when it created the LCRA as a governmental agency and gave it the express power to establish and collect rates sufficient only to maintain its existence.

For the foregoing reasons, I would hold that the LCRA Act, a general law which grants to the LCRA the power to establish and collect rates for electric energy, is inconsistent with any previous authority that San Marcos had to regulate such rates under the general powers vested in it as a home rule city and, therefore, any such previous authority was superseded by the LCRA Act. I would further hold that the LCRA can establish and collect its rates without regulation until the time, if ever, that the legislature decides to exercise its reserved power to regulate such rates.

GREENHILL, C. J., and DANIEL, J., join in this dissent.