

# The Attorney General of Texas

December 31, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas   77002

Opinion No.  MW-588

Re:  Whether the Harris County
sheriff has a duty to seize
and impound stray livestock
within the city limits of
Houston

Dear Mr. Driscoll:

You have asked the following question:

> Does the Harris County Sheriff have a duty to
> seize and impound estray livestock and livestock
> running at large within the portion of Harris
> County which is within the corporate limits of the
> city of Houston?

Chapters 142 and 143 of the Agriculture Code contain the statutes
governing "estray livestock and livestock running at large" to which
you refer in your letter and brief. See Tex. Const. art. XVI, §23
(legislature may pass laws regulating livestock).  Included in these
two chapters are provisions that impose upon county sheriffs a duty to
seize and impound certain animals.  Section 142.003 provides that upon
receiving a report of the presence of an estray upon a person's
property, or upon public property, "the sheriff or the sheriff's
designee shall impound the animal and hold it for disposition...."
See Agric. Code §142.002 (definition of "Estray").  Sections 143.031
and 143.080, which are contained in subchapters B and D of chapter
143, respectively, provide that the "sheriff or a constable of the
county or area shall seize and impound" any animal mentioned in those
subchapters that is illegally running at large.  Since you have
inquired only about the duties of the Harris County Sheriff vis-a-vis
"estray livestock" and "livestock running at large," we will only
construe these three sections, as they are the ones that deal with
this subject.

Sections 143.031 and 143.080 apply only in a "county or an area
within a county" within which subchapters B and D have been voted into
effect by the local "freeholders."  Agric. Code §§143.024; 143.074.
See also §§143.026; 143.076 (procedures for repeal of adoption of
subchapter).  The applicability of section 142.003, on the other hand,

is not dependent upon an election. For purposes of this opinion, we will assume that subchapters B and D have been voted into effect in Harris County. See Attorney General Opinion M-650 (1971) (predecessor statutes voted into effect in 1932). We will further assume that all or part of the city of Houston was included within the election districts wherein the stock law elections were held.

You contend that your question should be answered in the negative. As we understand it, your argument is essentially as follows: (1) Houston is a home rule city; (2) as such, it possesses all powers not denied by statute or by the Texas Constitution; (3) provisions of the Houston city charter, and an ordinance enacted pursuant thereto, empower the city to regulate estrays and livestock running at large within its corporate limits; (4) since this responsibility rests with the city, the foregoing provisions of the Agriculture Code should not be construed to be applicable within the Houston city limits.

Home rule cities do have broad powers, see Tex. Const. art. XI, §5; V.T.C.S. art. 1175; Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641 (Tex. 1975); Forwood v. City of Taylor, 214 S.W.2d 282 (Tex. 1948), but those powers are far from absolute. They are always subordinate to the power of the legislature. See Tex. Const. art. XI, §5. In this instance, the question is not whether the city of Houston is empowered to regulate livestock within its corporate limits. The city's charter clearly authorizes it to do so. Instead, it is whether the city of Houston has exclusive authority in this area. This is a question of legislative intent. We may answer your question in the negative only if we conclude that the legislature meant for the relevant Agriculture Code provisions to have no applicability within the corporate limits of a home rule city with charter provisions and ordinances authorizing it to regulate estrays and livestock running at large within its corporate boundaries.

The relevant provisions of subchapters B and D of chapter 143 do not, on their face, preclude home rule cities from being included within an election district in which an election is held for the purpose of voting those provisions into effect. Nor do we perceive any basis for reading into these provisions an implied exception for home rule cities. If anything, the wording of these provisions suggests that the legislature intended that any city, or portion thereof, may be included in such election district. Sections 143.021(a) and 143.071(a) both state that "the freeholders of a county or an area within a county may petition the commissioners court to conduct an election for the purpose of determining" whether the animals named therein will be permitted to run at large "in the county or area." (Emphasis added). See also §§143.021(d); 143.071(d) (petition to describe boundaries of area in which election is to be held). Nothing in this language suggests a legislative intent to exempt home rule cities from a "county or area within a county." In

this context, we note that the quoted language is not significantly different from the language that appeared in the predecessor statute, viz., "county or such subdivision of a county." V.T.C.S. art. 6954. In construing this language, the court in English v. State, 292 S.W. 229 (Tex. Crim. App. 1927), said that it found no evidence of legislative intent not to allow incorporated cities -- even those with ordinances authorizing them to regulate livestock -- to be included in election districts in which the state stock laws were voted into effect. The court said:

> This court is called upon to determine whether... it is legal to include in the district wherein the election was ordered the territory embraced within the incorporated city of Port Arthur.... It is true that the people within a city are not dependent upon the election, but the city might, by ordinance, prohibit stock from running at large within the incorporated limits. This was known to the Legislature, however, when the statute was enacted, without providing that in defining a district the commissioners' court should not include the territory embraced in any incorporated city.... Nothing in the language [of the statute] can, in the opinion of the writer, imply any intention or direction that the people of the incorporated cities within the counties might not participate, [even] though such cities might, by ordinance, protect themselves against stock running at large within their boundaries. The language used with reference to the entire county, and the manifest intent that the election should be one in which all freeholders, whether urban or suburban, could participate, is illustrative of the legislative intent.... (Emphasis added).

292 S.W. 230. We recognize that the English court was not dealing with a home rule city, but in light of its reasoning and approach, we see no reason why it would have reached a different conclusion if a home rule city had been involved.

It has been suggested that certain cases which preceded the English case stand for the proposition that the predecessors of the current state stock laws could not be given effect within the corporate limits of a city. The argument, we assume, is that if the former statutes could not be given effect therein, the current ones cannot as well. We will briefly consider these precedents, which, as the English court observed, "are not harmonious, but somewhat confusing." 292 S.W. at 230.

In Reuter v. State, 67 S.W. 505 (Tex. Crim. App. 1902), the court held that an election to prohibit livestock from running at large within Dallas County could have no effect within the city limits of the city of Dallas, because the city's legislatively granted charter gave it exclusive authority to control livestock within its boundaries.  In Neuvar v. State, 163 S.W. 58 (Tex. Crim. App. 1914), however, the court held that since the state livestock laws did not preclude incorporated cities from being embraced within the territory within which those laws could be voted into effect, the county elections in question were not invalid because the election districts comprised incorporated cities.  The court said:

> None of the statutory enactments providing for the adoption by vote of either of said stock laws excluded the incorporated towns or cities from being embraced within the territory designated within which such stock law could apply.  On the contrary, all the statutory enactments clearly provide that the whole of the county, which, of course, would embrace any and all incorporated cities and towns therein, as well as when the election is for any subdivision of such counties, shall or may be included.... (Emphasis added).

163 S.W. at 59-60.  See also Bishop v. State, 167 S.W. 363 (Tex. Crim. App. 1914).  But in Cowand v. State, 202 S.W. 961 (Tex. Crim. App. 1918), the court followed Reuter, rather than Neuvar or Bishop, and reached the same conclusion that it had reached there.  On the other hand, in English v. State, supra, the court held that a county stock law election was not invalid because the election district embraced the city of Port Arthur.  Finally, in Lock v. Morris, 287 S.W.2d 500 (Tex. Civ. App. - Texarkana 1956, writ ref'd n.r.e.), the court, citing Bishop, Neuvar, and English, refused to invalidate a county wide election on the ground that residents of the city of Jefferson had voted in it.  The city was incorporated, and it had enacted an ordinance prohibiting livestock from running at large within its corporate limits.

The Neuvar, Bishop, English, and Lock cases stand for the proposition that the state stock laws may be given effect within the limits of a city.  To the extent that they reach a different conclusion, moreover, Reuter and Cowand are clearly distinguishable from the case at hand.  In those two cases, the court emphasized that the legislature had specifically given the city of Dallas the exclusive power to regulate livestock within its corporate limits.  It held, in effect, that since the legislature clearly intended the city of Dallas to have complete authority in this area, it must not have intended the general state livestock laws to be given effect within the Dallas city limits.  The city of Houston, however, is on a different footing.  Although it has exclusive jurisdiction over its

streets and public grounds, article 1175, section 16, V.T.C.S., neither article 1175 nor any other law or legislatively granted city charter provision about which we are aware confers upon the city the exclusive power to regulate livestock within its corporate limits. Since this is true, we have no basis upon which to reach the conclusion to which the courts in Reuter and Cowand came, namely, that since a specific law gave the city of Dallas sole authority to regulate livestock, the general stock laws which could be voted into effect in Dallas County could not be given effect within the Dallas city limits.

Since the wording of the relevant provisions of chapter 143 of the Agriculture Code does not suggest that those provisions cannot be voted into effect within the corporate limits of a home rule city -- even one with charter provisions and ordinances authorizing it to regulate livestock -- and since there is no evidence of legislative intent to give the city of Houston exclusive authority to regulate livestock, we conclude that if subchapters B and D of chapter 143 have been voted into effect in the city of Houston, then they confer upon the sheriff of Harris County the same duties within the corporate limits of the city as he has outside of said limits.

The remaining question concerns section 142.003. As we have noted, the applicability of this section is not dependent upon an election. It provides in part:

>      (a)  A person who discovers an estray on that person's property or on public property shall report the presence of the animal to the sheriff of the county in which the animal is discovered....
>
>      (b)  After receiving a report under Subsection (a) of this section, the sheriff or the sheriff's designee shall impound the animal and hold it for disposition as provided by this chapter.

Just as we find no evidence that the provisions of chapter 143 cannot be voted into effect in home rule cities, we find no indication that section 142.003 was not intended to apply within the corporate limits of such cities. We therefore conclude that the duty imposed upon the sheriff by this statute exists both within and outside of the corporate limits of the city of Houston.

## S U M M A R Y

>      Section 142.003 of the Agriculture Code is applicable within the corporate limits of the city of Houston. Sections 143.031 and 143.080 are also applicable within said limits if subchapters B and

D of chapter 143 of the Agriculture Code have been voted into effect within the corporate limits of the city.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
George Gray
Jim Moellinger