Williams 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-540-CV





CHARLES R. WILLIAMS,



 APPELLANT


vs.





TEXAS STATE BOARD OF PUBLIC ACCOUNTANCY,



 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 92-15764, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING



 





 This is a license revocation case. After conducting an administrative hearing,
appellee, the Texas State Board of Public Accountancy ("the Board"), revoked the Certified Public
Accountant license of appellant, Charles R. Williams. Williams filed suit for judicial review, and
the district court found the Board's order void because of a violation of the Open Meetings Act. 
Tex. Gov't Code Ann. §§ 551.001-.146 (West 1994). On remand, the Board again issued an
order revoking Williams' license. The district court affirmed the Board's second order. Williams
appeals to this Court, contending that the Board failed to comply with various procedural rules
in issuing its order and that the order is not supported by substantial evidence.



BACKGROUND


 In July 1990, the Board began investigating whether Williams had violated various
generally accepted auditing standards while performing an audit of KLK Consulting and
Management Corporation ("KLK"), a holding company for various insurance companies doing
business in Texas. A public hearing on the allegations was held on February 3, 1992. After
considering the evidence and testimony offered at the hearing, the hearings officer issued a
proposal for decision recommending that no action be taken against Williams and that the case be
dismissed. On April 21, 1992, the Board held a closed meeting at which it rejected the hearings
officer's proposal and issued an order revoking Williams' license.

 Williams filed suit for judicial review of the Board's order in district court. 
Williams contended, among other things, that the Board's order had been rendered in violation
of the Open Meetings Act. The district court voided the Board's order, agreeing that the Board's
closed meeting had violated the Open Meetings Act, and remanded the cause to the Board.

 On October 1, 1992, the Board convened an open hearing. Williams' attorney was
present at this hearing. A member of the Board moved to "reaffirm the prior board's order
regarding revocation"; the motion was seconded and passed unanimously. The Board
subsequently issued a second order revoking Williams' license.

 Williams filed suit for judicial review of the Board's second order. The district
court affirmed the order. Williams appeals, raising eleven points of error. The first nine points
raise procedural issues; the tenth and eleventh points contend that the Board's order is not
supported by substantial evidence. We will provide additional factual background where
necessary while discussing Williams' points of error.



DISCUSSION


Trial Court's Failure to File Findings.

 In his first point of error, Williams contends that the trial court erred in failing to
file findings of fact and conclusions of law, thus leaving him "without a clue as to the basis for
the trial court's decision." 

 In a suit for judicial review of Board orders, the district court utilizes the
substantial evidence test. Tex. Rev. Civ. Stat. Ann. art. 41a-1, § 22(f)(3) (West Supp. 1994). 
The substantial evidence test requires the district court to make one conclusion of law: whether
substantial evidence supports the agency decision. Public Util. Comm'n v. Gulf States Utils. Co.,
809 S.W.2d 201, 211 (Tex. 1991); Texas State Bd. of Dental Examiners v. Sizemore, 759 S.W.2d
114, 117 (Tex. 1988). Findings of fact are unnecessary because there are no "facts" to be found
by the district court. Heard v. Incalcaterra, 702 S.W.2d 272, 276 (Tex. App.--Houston [1st Dist.]
1985, writ ref'd n.r.e.); Tilley v. Rogers, 405 S.W.2d 220, 222 (Tex. Civ. App.--Beaumont 1966,
writ ref'd n.r.e.). Accordingly, the district court did not err by refusing to file findings of fact
and conclusions of law. Williams' first point of error is overruled.



The Board's Rejection of the Hearings Officer's Decision

 In his second point of error, Williams contends the Board erred by failing to
comply with sections 2001.058(e) and 2003.021(b) of the Government Code. In his fourth point
of error, Williams contends the Board erred by violating section 2001.062 of the Government
Code. We will address these points together.

 Section 2003.021 requires that the State Office of Administrative Hearings
("SOAH") conduct all administrative hearings in contested cases before state agencies "that do not
employ an individual whose only duty is to preside as a hearings officer over matters related to
contested cases before the agency." Tex. Gov't Code Ann. § 2003.021 (West Supp. 1994). Both
sections 2001.058(e) and 2001.062(a) limit the ability of a state agency to reject decisions
proposed by administrative law judges. Section 2001.058(e) allows a state agency to change an
administrative law judge's findings of fact or conclusions of law only for policy reasons, and the
agency must state in writing the reason and the legal basis for the changes. Tex. Gov't Code Ann.
§ 2001.058(e) (West Supp. 1994). Section 2001.062(a) also limits an agency's decision-making
power:




In a contested case, if a majority of the state agency officials who are to render a
final decision have not heard the case or read the record, the decision, if adverse
to a party other than the agency itself, may not be made until:


 (1) a proposal for decision is served on each party; and


 (2) an opportunity is given to each adversely affected party to file
exceptions and present briefs to the officials who are to render the
decision.



Tex. Gov't Code Ann. § 2001.062 (West Supp. 1994).

 At the time that Williams' case was heard, the Board did not employ its own
hearings officer, and was therefore covered by the SOAH statute. However, as of February 3,
1992, the date of Williams' contested hearing on his license revocation, SOAH did not yet employ
any administrative law judges to conduct hearings. SOAH did not begin conducting hearings until
several months later. As an alternative, the Board hired a private attorney to act as its hearings
officer. Williams has never complained that hiring the private hearings officer was improper. 
Instead, Williams complains that SOAH procedures, specifically, Government Code sections
2001.058(e) and 2001.062(a), should have governed the hearing. Williams contends that the
Board's rejection of the hearings officer's recommendation and substitution of its own decision
violated these sections.

 Section 2001.058(a) states that "[t]his section applies only to an administrative law
judge employed by the State Officer of Administrative Hearings." Tex. Gov't Code Ann.
§ 2001.058(a) (West Supp. 1994) (emphasis added). The requirements of section 2001.058(e) are
therefore inapplicable to Williams' hearing, because the hearings officer was not an administrative
law judge employed by SOAH.

 However, even if section 2001.058(e) does apply, the record indicates that the
Board met its requirements. Williams was provided with and responded to the Board staff's
written exceptions to the hearings officer's proposed decision. The Board's order adopted the
staff's exceptions and proposed decision. The exceptions and recommendation of the staff
provided reasons, supported by legal analysis, why the Board should reject the hearings officer's
proposed decision, thus satisfying the requirements of section 2001.058(e).

 With regard to section 2001.062(a), we conclude that its requirements do not bind
the Board in this case. Section 2001.062(a) applies only if a majority of the agency's members
"have not heard the case or read the record." Tex. Gov't Code Ann. § 2001.062(a) (West Supp.
1994) (emphasis added). We conclude that the record on appeal indicates that the Board did read
the written transcript of the hearing before rendering its decision. In its second order, the Board
stated, "After careful consideration of the Proposal for Decision, review of the entire record in
this proceeding, and following argument of counsel, the Board order the following . . . .
(emphasis added)." Points of error two and four are overruled.



Open Meetings Act

 In his third point of error, Williams argues that the district court erred by affirming
the Board's order, contending the order was issued in violation of the Open Meetings Act. Tex.
Gov't Code Ann. §§ 551.001-.146 (West 1994).

 The Board issued two orders revoking Williams' license. The district court
invalidated the first order, finding that its adoption in a closed executive session violated the Open
Meetings Act. On remand, on October 1, 1992, the Board voted to issue a second order revoking
Williams' license. The Board voted to issue its second order during an open meeting; a Board
member made a motion to "reaffirm the prior board's decision regarding revocation," the motion
was seconded, and then passed unanimously. The district court found that the second order was
issued in compliance with the Open Meetings Act.

 Williams complains that although the October 1, 1992 meeting was open, there was
no discussion regarding the revocation of his license. We find no requirement for discussion in
the Open Meetings Act. (1) We therefore conclude that the district court did not err by affirming
the Board's second order, and overrule Williams' third point of error.



Revocation Procedures

 In his fifth point of error, Williams argues that the district court erred by affirming
the Board's order because the Board violated section 22(b) of the Public Accountancy Act. 
Section 22(b) provides that "[t]he board shall adopt procedures by which a decision to suspend
or revoke a license is made by or is appealable to the board." Tex. Rev. Civ. Stat. Ann. art.
41a-1, § 22(b) (West Supp. 1994).

 We conclude that the Board has promulgated procedural rules in compliance with
section 22(b), found at 22 Tex. Admin. Code § 519 (1994). Among these rules is section 519.27,
entitled "Practice and Procedure." 22 Tex. Admin. Code § 519.27 (1994). Williams' fifth point
of error is overruled.



Informal Conference

 In his sixth point of error, Williams argues that the district court erred by affirming
the Board's order because the Board did not hold an informal conference with him prior to the
commencement of the administrative proceedings. Williams contends that he was entitled to an
informal conference, citing Government Code Section 2001.054(c)(2). That section provides: 
"A revocation, suspension, annulment, or withdrawal of a license is not effective unless, before
institution of state agency proceedings . . . the license holder is given an opportunity to show
compliance with all requirements of law for the retention of the license." Tex. Gov't Code Ann.
§ 2001.054(c)(2) (West Supp. 1994).

 In construing article 6252-13a, section 18(c), the predecessor of section 2001.054, (2)
this Court stated that section 18(c) establishes "general hearing and notice requirements"; the
provision "requires that an agency give notice and provide an opportunity for hearing prior to
suspension of a license." Texas Dep't of Health v. Gulf Nuclear, Inc., 664 S.W.2d 847, 850
(Tex. App.--Austin 1984, no writ). The "opportunity to show compliance" required by section
2001.054(c)(2) refers not to an informal conference preceding the license-suspension hearing, (3) but
to the license-suspension hearing itself. Williams received such a hearing before the private
hearings officer. Point of error six is overruled.



Notice

 Williams brings two points of error contending that he received inadequate notice
of the disciplinary proceedings brought against him by the Board. Williams contends that section
2001.052(b) requires the Board to furnish him with "a more definite and detailed statement upon
timely application." This is a misconstruction of the provision's requirements. Section
2001.052(b) provides:



If a state agency or other agency is unable to state matters in detail at the time
notice under this section is served, an initial notice may be limited to a statement
of the issues involved. On timely written application, a more definite and detailed
statement shall be furnished not less than three days before the date set for the
hearing.


Tex. Gov't Code Ann. § 2001.052(b) (West Supp. 1994) (emphasis added). Thus, under section
2001.052(b), a "more definite and detailed statement" is required only if the initial notice lacks
sufficient detail.

 The Board sent Williams a three-page letter by certified mail, (4) to provide him with
notice of the allegations that were the basis of the disciplinary proceeding. The letter alleges that
Williams violated generally accepted auditing standards in his audit of KLK, specifically, that
Williams failed to adequately plan the audit, failed to obtain evidence upon which to base an
opinion regarding KLK's financial statements, failed to objectively determine values and
ownership of securities listed on KLK's financial statement, and provided inadequate supervision
of those who assisted him in conducting the audit. The letter then lists the provisions of the
Public Accountancy Act and Rules of Professional Conduct that Williams allegedly violated. We
hold that this letter provided Williams with sufficiently detailed notice of the allegations made
against him. Therefore, no additional statement was required. Points of error seven and eight
are overruled.



Administrative Costs

 In his ninth point of error, Williams contends that the district court erred by
affirming the Board's order because it "contains an additional penalty of $5,522.00 that is not
contained in the April order." Williams contends that the fine is "transparently vindictive," and
thus violates Government Code section 2001.174(2). Tex. Gov't Code Ann. § 2001.174(2) (West
Supp. 1994).

 From a review of the two orders, however, it is apparent that the board assessed
administrative costs against Williams in both orders. In its first order, the Board adopted the
staff's proposal for decision with only one modification; the Board reduced the administrative
penalty of $7,000 in the staff's proposal for decision to $1,000. However, the proposal for
decision also recommended assessing $5,520.00 in administrative costs, pursuant to 22 Tex.
Admin. Code § 519.27(h) (1994). The Board's second order assesses the same amount,
$5,520.00, in administrative costs. The only difference between the two orders is that the first
order assessed the administrative costs by adopting the staff's proposal for decision, while the
second order lists the assessment of administrative costs in the main document. The second order,
therefore, contains no "additional penalty." Williams' ninth point of error is overruled.



Substantial Evidence Supporting Board's Order

 In his tenth and eleventh points of error, Williams contends that the district court
erred by affirming the Board's second order and by denying his request for a permanent injunction
to set aside the order, because the record lacks substantial evidence to support the Board's order. 
In his brief, Williams attacks findings of fact one, four, and six through sixteen, and conclusions
of law one through twelve. The bulk of Williams' argument, however, is aimed at findings of fact
six through eight, and eleven through fourteen, which all relate to Williams' treatment in his audit
of KLK's securities portfolio. KLK's securities portfolio represented the bulk of the assets that
the company claimed to hold, and the Board contended that the values reported in Williams' 1988
audit were significantly inflated. The Board found that Williams' audit inadequately tested the
value of these securities, did not document evidence used to evaluate the securities, failed to
disclose related party transactions involving the securities, and failed to ascertain whether KLK
actually owned the securities. (5)

 Board decisions are subject to judicial review under the substantial evidence rule. 
Tex. Rev. Civ. Stat. Ann. art. 41a-1, § 22(f)(3) (West Supp. 1994). The test is whether the
evidence as a whole is such that reasonable minds could have reached the conclusion that the
agency must have reached in order to justify its decision. Sizemore, 759 S.W.2d at 116; Railroad
Comm'n v. Shell Oil Co., 161 S.W.2d 1022, 1029 (Tex. 1942). Substantial evidence review does
not permit us to substitute our judgment for that of the Board. Gulf States Utils. Co., 809 S.W.2d
at 211; Sizemore, 759 S.W.2d at 117. "Resolution of factual conflicts and ambiguities is the
province of the administrative body and it is the aim of the substantial evidence rule to protect that
function. The reviewing court is concerned only with the reasonableness of the administrative
order, not its correctness." Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer, 662
S.W.2d 953, 956 (Tex. 1984).

 We will summarize the evidence in the record regarding KLK and these
investments, Williams' knowledge of these investments, and how Williams reviewed these
securities in the course of his audit. We will then consider whether this evidence is such that a
reasonable mind could reach the decision made by the Board.

 Williams took over the 1988 audit of KLK after the accounting firm of Hein &
Associates ("H&A"), which had performed the 1987 audit of KLK, resigned. Williams had been
a partner with H&A, and had participated in the 1987 audit.

 During the 1987 audit, Williams wrote a letter to KLK describing problems H&A
had encountered in performing the audit, including "[s]ome legal questions with regard to some
of the securities in the investment portfolio." Williams' letter expressed concern that several of
the securities had been purchased by the issuance of surplus notes; the letter noted that purchasing
previously unissued stocks with promissory notes was illegal in most states. The letter continued,
stating that "[d]espite repeated requests for current financial statements on these companies, we
have been furnished (for the most part) with outdated financial statements that are either unaudited
or pro-forma and which reflect, in some cases, that the companies are worthless."

 Williams' letter also expressed H&A's concern as to whether KLK owned the
securities listed on its balance sheet: "Some doubt remains in our minds that these securities are
owned outright by the insurance companies and can be sold by them, if needed, to cover losses
and expenses from claims." Regarding Pacific Equities Capital Management, Inc., one of the
questionable securities, Williams wrote, "It will not suffice, for audit purposes, to have Owen
Stephenson [Pacific's president] just say that everything is O.K." Williams explained that
independent corporate and securities attorneys would be needed to review Pacific Equities'
financial status. H&A ultimately completed the 1987 audit of KLK, but the problems raised in
the letter regarding KLK's securities portfolio ultimately led H&A to resign before completing
the 1988 audit.

 Williams, who had recently left H&A, took over the 1988 audit of KLK from
H&A. At KLK's request, H&A made available to Williams all of its workpapers relating to the
1987 and 1988 audits. With the workpapers, H&A wrote Williams a letter explaining the nature
of the work that H&A had performed, and the state of the audit when H&A resigned. H&A was
explicit that the firm had not completed the 1988 audit. H&A warned that "significant issues and
open items were identified [in their workpapers] for subsequent resolution. Such resolutions were
not accomplished as a result of our withdrawal." Furthermore, H&A warned Williams that he
should be hesitant in relying on the firm's audit workpapers, given that H&A had never completed
the audit. Finally, the letter stated that Williams had discussed with H&A the firm's reasons for
resigning from the 1988 audit, which were summarized in an outline attached to the letter.

 The outline attached to the letter listed several bases for H&A's resignation. First
was the fact that Ben Kirk, KLK's president, "is incarcerated at Lompac." (6) KLK's management,
however, gave H&A a different explanation for Kirk's absence, telling H&A that Kirk was "out
of the country developing business." The outline also stated that while H&A was investigating
the values of securities listed on KLK's balance sheet, it received two confirmations of the values
"under suspicious circumstances." The outline continued, stating that there were "significant
questions about ownership of investment securities." The outline also noted that Owen
Stephenson, the president of Pacific Equities, one of KLK's larger investments, had been
"convicted and incarcerated for mail, bank and wire fraud in 1979 and 1982." The outline further
stated that "[c]ertain areas of the audit appear to be unauditable, especially in the light of our
inability to rely on management. Continuation would require extensive additional audit work and
end result is not known." Finally, the outline noted that H&A was not currently withdrawing its
1987 auditor's report, but reserved the right to do so in the future, and did not expect any further
distribution of the report.

 In addition to the above documents, Williams' workpapers from his audit indicate
an awareness that he had agreed to perform a high-risk audit, and that the valuation of KLK's
securities portfolio was particularly important. Indeed, KLK's securities portfolio made up
seventy percent of its assets as listed on its 1988 balance sheet. However, Williams apparently
did not prepare an audit program that specifically addressed the securities; no securities audit
program was found in Williams' workpapers and Williams produced no such program when
requested to do so by the Board's staff. Instead, Williams wrote in his workpapers, "I have
concluded that I can rely very heavily on the audit work already performed by Hein and
Associates' 1988 audit prior to their resignation."

 The securities held by KLK were not widely known or traded. Most were traded
over-the-counter, and the trading of some was restricted by the Securities and Exchange
Commission. There is testimony in the record that Williams relied in part upon telephone
conversations with securities brokers in confirming the values that KLK listed for its securities. 
However, the record contains no written confirmations of the securities' values that Williams
received or relied upon, and there is no indication that Williams even secured financial statements
of the companies in which KLK held stock. There is testimony in the record that Williams
verified ownership of the securities by relying upon a legal opinion. However, the legal opinion
could not be found among Williams' workpapers.

 There is also evidence in the record that Williams' workpapers were not generated
during his audit, but instead after the Board began its investigation. The Board obtained
Williams' workpapers as part of its investigation. Bill Schuh, the Board's investigator and expert
witness, inspected the workpapers and testified that in his opinion the workpapers had been
generated after Williams completed his audit.

 Having considered the record as a whole, we conclude that there is substantial
evidence to support the Board's decision. While we recognize that Williams has pointed us to
evidence, particularly testimony from the hearing, that conflicts with some of the Board's
findings, this evidence is not enough to undermine the Board's decision. "[T]he evidence in the
record actually may preponderate against the decision of the agency and nonetheless amount to
substantial evidence." Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665
S.W.2d 446, 452 (Tex. 1984). We hold that the evidence as a whole is such that reasonable
minds could have reached the decision made by the Board. Accordingly, points of error ten and
eleven are overruled.



CONCLUSION


 Finding no error, we affirm the judgment of the district court, which affirmed the
decision of the Board.


 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: August 31, 1994

Do Not Publish
1. [1]  See Eudaly v. City of Colleyville, 642 S.W.2d 75, 77-78 (Tex. App.--Fort Worth 1982,
writ ref'd n.r.e.) (holding that when first of two meetings violated Open Meetings Act, but no
voidable action taken at the first meeting, action taken during second meeting, held in
compliance with Act, valid). Williams incorrectly cites Lower Colorado River Authority v.
City of San Marcos, 523 S.W.2d 641 (Tex. 1975) for the proposition that an agency cannot
"ratify" a previously voided order. Instead, Lower Colorado River Authority held that a rate
increase, invalidated for an Open Meetings Act violation, could not be reaffirmed at a later
meeting so as to make the rate increase effective from the date of the original, invalid order. 
Id. at 646-47.
2. [2]  The codification of section 18(c) and the former Administrative Procedure and Texas
Register Act ("APTRA") of which it was a part was nonsubstantive. See Act of May 4, 1993,
73d Leg., R.S., ch. 268, § 47, 1993 Tex. Gen. Laws 583, 986. 
3. [3]  We note that the APA provides elsewhere for informal resolution of contested cases. 
See Tex. Gov't Code Ann. § 2001.056 (West Supp. 1994) (providing that "an informal
disposition may be made of a contested case," then listing several methods); see Asbury v.
Texas State Bd. of Pub. Accountancy, 719 S.W.2d 680, 682 (Tex. App.--Austin 1986, no
writ). 
4. [4]  The certified mail receipts are in the record.
5. [5]  Rule of Professional Conduct 501.22 adopts the generally accepted auditing standards
("GAAS") promulgated by the American Institute of Certified Public Accountants. 22 Tex.
Admin. Code § 501.22 (1994). The Board found that in performing the audit, Williams
violated the following GAAS provisions: § 150.02 ("General Standards"); § 311.05 ("Planning
and Supervision"); § 322.02 ("The Effect of an Internal Audit Function on the Scope of the
Independent Auditor's Examination"); § 332 ("Long-Term Investments"); § 334 ("Related
Parties"); and § 339.05 ("Working Papers"). 
6. [6]  Lompoc is a prison in California.