CITY OF SHOREACRES, Appellant,

v.

STATE of Texas, Appellee.

No. 17395.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 10, 1979.

Rehearing Denied June 14, 1979.

Michael T. Hay, J. D., Pasadena, for appellant.

Mark White, Atty. Gen., Linda M. Wells, Thomas F. Aubry, Asst. Attys. Gen., Dick H. Gregg, Jr., Houston, for appellee.

Before EVANS, WALLACE and WARREN, JJ.

EVANS, Justice.

This is an appeal by the City of Shoreacres from a judgment entered in a consolidated proceeding involving three separate actions. In the first suit, the appellee, State of Texas, sought injunctive relief and civil penalties against the City of Shoreacres and the appellee, Bayshore Municipal Utility District, alleging violations of the Texas Water Quality permit jointly held by Shoreacres and Bayshore MUD and of the provisions of the Texas Water Quality Act, § 26.001 et seq., Texas Water Code Ann. (1972). In the two subsequently filed actions, Shoreacres sought to recover from Bayshore MUD the cost of treating Bayshore MUD's sewage during the period February 1, 1977, through August 31, 1978, and to enjoin Bayshore MUD from further injecting its sewage into Shoreacres' sewage treatment plant.

The trial court, acting upon the recommendation and agreement of the parties, appointed a special master to investigate the parties' waste treatment and disposal problems and to devise a long range solution for such problems. As an adjunct, the special master was also instructed to inquire into the reasonableness of the rates charged by Shoreacres to Bayshore MUD for the treatment of its sewage. The trial court's order of appointment provided that the master's report would not be binding upon either the court or the litigants and that the court, upon hearing, could either adopt the master's recommendations or substitute its own judgment in the cause.

The special master subsequently filed his report with the trial court, expressing in considerable detail his findings and recommendations for a cost effective solution of the parties' waste treatment problems. In his report, he recommended that both entities transfer all waste water to the City of La Porte for treatment and discharge, and, alternatively, that a joint treatment facility be constructed capable of discharging a satisfactory level of effluent into Galveston Bay. He recommended that if the parties could not jointly transfer or treat their waste, that each entity be given a reasonable time not to exceed 2½ years in which to comply with the Texas Water Code and applicable rules and regulations.

The State of Texas filed a response to the special master's report urging the trial court to adopt the master's first recommendation that the parties' sewage be transferred to the City of La Porte for treatment. Shoreacres also filed a response, objecting to the adoption of the special master's recommendations and urging alternative courses of action. Bayshore MUD did not file a written response, but it did urge adoption of the special master's recommendations.

On October 2, 1978, following the submission of the special master's report, the consolidated cause was tried to the court without a jury. The trial court subsequently

entered its judgment of same date, finding that both Shoreacres and Bayshore MUD were in violation of the Texas Water Code and/or the rules, regulations, permits and orders of the Texas Department of Water Resources, and adopting the special master's report. It ordered Shoreacres and Bayshore MUD to transfer all waste water to the City of La Porte for treatment and discharge within two years and six months from the date of the judgment and, within 90 days from the date of judgment, to execute contracts with the City of La Porte for such service and begin construction of the necessary connection systems. As an alternative to this mandate, and in recognition of Shoreacres' request that it be released from further obligation to treat Bayshore MUD's waste water, the trial court ordered Shoreacres to upgrade its own sewage so as to produce effluent within the parameters of its discharge permit within two years and six months from the date of judgment, and decreeing that Shoreacres would have no further obligation to treat Bayshore MUD's waste water, it directed (1) that the collection system between the two entities should be severed within one year from the date of judgment; (2) ordered that Bayshore MUD, within 90 days of the date of judgment, execute a contract with the City of La Porte for treatment of its waste water; (3) required Shoreacres to release its extraterritorial jurisdiction over Bayshore MUD; and (4) specified that within 2½ years of the date of judgment, both Shoreacres and Bayshore MUD would be required to produce effluent within the legal requirements of the Texas Water Code and the Texas Department of Water Resources. The trial court also determined the reasonable and proper rate to be charged by Shoreacres for treatment of Bayshore MUD's waste water for the calendar year 1977 to be the sum of $2317.00 per month, and for the calendar year 1978, and until such time another manner of sewage treatment could be available to Bayshore MUD, to be the sum of $2439.00 per month.

In its first three points of error Shoreacres contends that the trial court exceeded its constitutional authority in specifying the particular manner and method of its compliance with applicable laws, rules, and regulations and in requiring, as an alternative to such compliance, that it relinquish its extraterritorial jurisdiction over Bayshore MUD. Under these points, Shoreacres argues that such matters are legislative in nature, and not judicial, and that the determination of such matters is vested exclusively in the governing body of the city government.

■ These points of error must be sustained. Clearly, the trial court was empowered to enjoin Shoreacres and Bayshore MUD from discharging effluent in violation of applicable laws, rules and regulations, and to impose civil penalties for such violations, and it was also authorized to order said parties to take appropriate action to assure future compliance with such laws. However, it was not empowered to specify the particular means or methods to be employed by the parties in bringing themselves in compliance. *City of Dallas v. Early*, 281 S.W. 883 (Tex.Civ.App.—Dallas 1926, writ dism'd).

"The court below was within its power in ordering the abatement of the nuisances, but in our opinion it went afield in directing appellants to accomplish these results by the doing of certain acts that required the exercise of political or legislative power . . . .. The court very properly required the abatement of the nuisances, and may hold appellants amenable for disobeyance of its order, but they must be left at liberty, [and] in the exercise of the power vested in them, to adopt the necessary ways and means of accomplishing the desired results." 281 S.W. 883

The State concedes that such matters are ordinarily within the governing body's legislative discretion, but it contends that the trial court was authorized to review Shoreacres' action and to intervene in its judgment because its governing body violated state law.

■■ A governing body's exercise of a discretionary power may be judicially reviewed to determine whether its action is

illegal, arbitrary or capricious. *Stone v. City of Wylie,* 34 S.W.2d 842 (Tex.Comm. App. SB 1931, judgment affirmed). Where its action is shown to be illegal or arbitrary, the court, by writ of mandamus or by mandatory injunction, may require the governing body to take affirmative action in order to perform its specified duties. *Inverness Forest Improvement District v. Hardy Street Investors,* 541 S.W.2d 454 (Tex.Civ. App.—Houston [1st Dist.] 1976, writ ref'd n. r. e.). However, it is not the trial court's proper judicial function to direct the governing body in a specific method or manner of performing the required action. *Barrington v. Cokinos,* 161 Tex. 136, 338 S.W.2d 133 (1960); *Inverness Forest Improvement District v. Hardy Street Investors,* supra.

In *Barrington,* the Texas Supreme Court, quoting from its earlier opinion in *Lewis v. City of Fort Worth,* 126 Tex. 458, 89 S.W.2d 975, 978 (1936) stated:

"... where the law visits upon a governing body the duty to exercise its sound judgment and discretion, courts have no right to interfere so long as such body acts lawfully. In other words, a court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act. Of course, if such governing body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge, *but there the power of the court ends.*" (emphasis added)

■ In the case at bar the trial court exceeded its judicial authority in ordering Shoreacres to enter into a contract with the City of La Porte for the treatment of its waste water and in directing, as an alternative to compliance with such order, that Shoreacres release its extra-territorial jurisdiction over Bayshore MUD so that the latter might have its waste water treated by the City of La Porte. These matters were exclusively within Shoreacres' legislative discretion and were beyond the scope of the trial court's judicial function.

For the reasons stated, the trial court's judgment must be reversed and, in the in-

terests of justice, the cause will be remanded to the trial court. In view of further proceedings, this court will not consider the issues raised in Shoreacres' fifth and sixth points of error concerning the propriety of the trial court's determination of rates for Shoreacres' treatment of Bayshore MUD's waste water from and after the date of judgment.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this court's opinion.