**CITY OF HOUSTON, et al., Appellants,**

v.

**Lester W. TYRA, et al.,
Appellees/Cross Appellants.**

**No. A14-88-463-CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 15, 1990.

Rehearing Denied March 29, 1990.

Robert J. Collins, Houston, for appellants.

Gene Jones, Thomas R. Steinmeyer, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

This is an appeal by the City of Houston from a final judgment permanently enjoining and restraining the Fire Chief from implementing or applying Houston Fire Department Order No. 4 ("Order No. 4"), a procedure which would test the ability of each firefighter to perform job related tasks within a prescribed period of time. The city brings two points of error alleging: (1) no evidence and/or insufficient evidence to support the trial court's finding that the time limit imposed by Order No. 4 is arbitrary and unreasonable; and (2) that the trial court erred in finding that the time limit for completing the performance test was arbitrary and unreasonable because in so doing the trial court substituted its judgment for that of the Fire Chief. Appellee brings a cross-point alleging the injunctive relief granted should have found Order No. 4 in conflict with civil service rules governing suspension or removal of public employees. We reverse and render.

The Chief of the City of Houston Fire Department promulgated Order No. 4 requiring all fire department personnel involved in fire suppression activities to take a test involving eight tasks (or "evolutions") commonly performed by firefighters at sites of typical fires. Not all the tasks are performed at all fires. The purpose of the test was to determine whether individual firemen were capable of performing with a high degree of professional skill the strenuous tasks required of them when fighting fires. Firemen were subject to termination upon continuing to fail the test after taking it six times.

Appellees are Houston firemen who brought suit to enjoin the fire chief from implementing Order No. 4, claiming the test needlessly places firemen in substantial risk of physical injury, particularly cardiac arrest; that blood pressure standards required in advance of the test were arbitrarily and capriciously set and discriminated against Black people; and that the order was an attempt to circumvent Texas civil service law. None of the pleadings challenged the approximate 5 minute time period within which the tasks would have to be performed by personnel taking the test.

Appellees' cross-point asserts that Order No. 4 conflicts with an alleged exclusive list of grounds found in the Local Govern-

ment Code for removal or suspension of civil service employees, claiming that none of the twelve includes the failure to pass a performance test of the type prescribed by Order No. 4 at issue here.

There was evidence that considerable time, thought, analysis, debate and judgment went into the selection of a time limitation for performing the tasks related to Order No. 4.

There was testimony to show a reasonable amount of time would be between 5 minutes and 8 minutes, including the testimony of Fire Chief Clayton who observed that the most critical time at the scene of a typical fire is the first five minutes after firefighters arrive.

To aid in the selection of the time standard ultimately chosen, a cross-section of about 100 firemen of all ages, job descriptions and longevity with the fire department were tested on the eight evolutions. Statistics were assembled from that sampling after deleting data related to the slowest 10 percent of the participants as well as the fastest 10 percent. The score at the mid point of the remaining array of scores was 5 minutes and 14 seconds. The simple average was 5 minutes and 30 seconds. The standard was finally set at 5 minutes and 15 seconds, plus an added allowance for each participant of one second for each year of past service with the Houston Fire Department.

The trial court witnessed a video tape in which a 45 year-old fire department training officer performed the eight tasks in 4 minutes and 43 seconds.

The trial court permanently enjoined the City, the Mayor, and the Fire Chief (and their employees and agents) from implementing or applying Order No. 4.

The final judgment of the trial court contains the following findings:

> The Court, having heard the testimony and examined the proofs offered by the respective parties, finds that a permanent injunction should be granted for the following reasons:

(1) The individual evolutions indicated or called for in the Number 4–Multiple Task Performance Policy of the Houston Fire Department are job related in so far as they reflect the normal tasks of a firefighter.

(2) The time limitation, five minutes and seventeen [sic] seconds, however, is not job related.

(3) The imposition of that time limitation is arbitrary and unreasonable.

(4) Such a time limitation changes the Number 4–Multiple Task Performance Policy to an invalidated physical fitness test.

(5) Although there may be a need for a test involving multiple tasks as outlined to evaluate reasonably the fitness and knowledge of employees of the fire department, the Number 4–Multiple Task Performance Policy in its current form is unreasonable and should be permanently enjoined from implementation.

(6) The evidence indicates that seven to eight minutes would be a reasonable time limitation for the test as outlined.

We presume the trial court's ruling means that if Order No. 4 were to be implemented after modification to a standard of seven or eight minutes, no further injunction would issue from that court.

We address appellant's points of error by reference to a prior case in which this court dissolved an injunction found to be improper. Two reasons were given:

> First, a district court has very limited authority to substitute its judgment for the discretionary acts of public officials.

> Second, the court improperly directed a governing body in a specific manner of performing an action.

*City of Houston v. Houston Police Officers Ass'n,* 715 S.W.2d 145 (Tex.App.—Houston [14th Dist.] 1986, no writ).

In that case, the police officers' association had been granted relief from the city's imposition of a new type of sidearm hol-

ster [1]. The principles found in that opinion are worthy of paraphrase here. Fundamental to our system of government is the doctrine of separation of powers. The city council has empowered the Houston Fire Department to provide fire protection services to the residents of the city. A court has no right to substitute its judgment and discretion for that of the governing body upon which the law visits the primary power and duty to act, unless that body acts illegally, unreasonably, or arbitrarily. In those latter circumstances, a court of competent jurisdiction may so adjudge, but must stop there. *City of Shoreacres v. State of Texas*, 582 S.W.2d 211, 214 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The one attacking the city's action has the extraordinary burden to show that "no *conclusive*, or even *controversial* or issuable, facts or conditions" exist that would authorize the city's exercise of the discretion confided to it. *City of Waxahachie v. Watkins*, 154 Tex. 206, 275 S.W.2d 477, 480 (1955).

"If the issue of validity is fairly debatable courts will not interfere." *Id.* 275 S.W.2d at 481. A question of law presents itself in these matters where there must be a showing of no controversial or issuable facts as to whether the city's action "makes for the good of the community". *Id.*

■ There was no evidence that Order No. 4 was illegal, unreasonable or arbitrary. There was evidence that it is in the best interests of the community to have firemen capable of performing the tasks which the court below indeed found to be "job related". There was evidence that the good of the community is served by having firemen act as quickly as possible when arriving at the scene of a fire. There was evidence that the time standard set by the

fire chief was within an arguable range of reasonableness; that it could be met safely; and that at least half of the sampling of firemen could perform as directed in the order. There was nothing arbitrary or unreasonable about the 5 minutes and 15 second time limitation, contrary to the trial court's finding. We also note that the trial court holding is not responsive to the pleadings. The plaintiffs sought no relief from the amount of time in which the tasks must be performed.

Appellant's points of error are sustained.

We now turn to appellees' cross-point of error. The Local Government Code provides for civil service commission rules affecting suspension or removal of employees upon twelve specific grounds, including "violation of an applicable fire (or police) department rule or special order". TEX.LOC. GOV'T CODE ANN. § 143.051(12). Appellees argue that the commission has exclusive power under section 143.051 to make the rules of suspension and removal of employees and that Order No. 4 is void on its face because it provides for suspension in a range of from one day (for failing the test the third time) to "indefinitely" (after the sixth failure) upon sole authority of the fire department.

The predecessor to section 143.051 was TEX.REV.CIV.STAT. art. 1269m § 5, which contained substantially the same wording. In *City of Sweetwater v. Geron*, 380 S.W.2d 550 (Tex.1964), a police officer challenged the validity of a municipal ordinance [2], arguing that article 1269m § 5 was the exclusive grounds for any removal of a civil service employee. The supreme court found that broad powers granted to home rule cities by the Texas Constitution included the power to legislate cause for dismissal of employees on grounds not included in article 1269m § 5. Later, in *Jackson v.*

---

1. A temporary injunction was granted after the association asked the court "to replace [the new holster without a 'flap'] with a properly designed, safe revolver holster." The court entered mandatory orders, telling the city it "could not deny the officers ... the privilege of using the flap holsters;" to institute "a more comprehensive selection process;" and to consult with representatives of the police organizations "to determine their recommendations as to the type

and style of holster" in order to "select a holster that is safer and that has better weapon retention security."

2. The ordinance provided for retirement of all city employees at age 65. On the effective date of that ordinance the police officer, age 70, was removed from office.

*Firemen's and Policemen's Civil Service Comm'n of Galveston,* 466 S.W.2d 412 (Tex.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.) it was found that the fire department chief was authorized under article 1269m to suspend indefinitely any employee under his jurisdiction for violation of civil service rules, and that the suspended employee had the right of appeal from such suspension. *City of Sweetwater v. Geron* was cited in *Jackson* for the proposition that the civil service commission does not have exclusive power to dismiss employees. The policy of the chief executive officer of the city could allow dismissal of employees provided the policy "bears a reasonable relationship to maintenance of an efficient fire fighting force." *Jackson,* 466 S.W.2d at 416. Reasonable minds could not disagree that the policy behind Order No. 4 promotes the interests of an efficient fire fighting force.

■ After the filing of this appeal, section 143.1115 was added to the Local Government Code effective August 28, 1989. We take notice that this new section does provide the exclusive procedure for determining whether a firefighter is sufficiently physically fit to continue his duties. This new procedure becomes triggered by a fire department order calling for the firefighter to go, at his own expense, to his personal physician and obtain a written report for submission to the civil service commission, after which there are provisions for subsequent review. Order No. 4 does not appear to be inconsistent with this new procedure. Appellees' cross-point of error is overruled.

The judgment of the trial court is reversed and judgment is rendered for appellant. The permanent injunction is dissolved.