Lester W. TYRA, et al., Petitioners,

v.

CITY OF HOUSTON, Texas,
et al., Respondents.

No. C–9845.

Supreme Court of Texas.

Dec. 18, 1991.

Thomas R. Steinmeyer, Joan Marie Lucci Bain, Houston, for petitioners.

Robert J. Collins, Clarence A. West, Houston, for respondent.

OPINION

MAUZY, Justice.

This cause involves a City's authority to adopt its own procedure to determine whether fire fighters are fit to continue their duties. Lester W. Tyra and others (Tyra), members of the City of Houston Fire Department, filed suit against the City of Houston and others (the City) to enjoin the fire chief's implementation of certain test procedures. The court of appeals reversed the trial court judgment which granted the requested relief. 786 S.W.2d 457. We reverse the judgment of the court of appeals and remand this cause to the trial court.

In 1987, the chief of the Houston Fire Department issued Department Order No. 4, requiring all personnel involved in fire suppression to take annual tests. Tyra challenged the order, asserting that the tests would subject fire fighters to undue risk of physical injury, that blood pressure standards set out in the order were arbitrary and discriminatory, and that the order was an attempt to circumvent the Fire Fighters' and Police Officers' Civil Service Act, Tex.Loc.Gov't Code ch. 143 (formerly Tex.Rev.Civ.Stat.Ann. art. 1269m (Vernon 1963)) ("the Act"). The trial court rendered judgment for the fire fighters and permanently enjoined the fire chief from implementing or applying Order No. 4.

While this case was pending before the court of appeals, the Texas legislature amended the Act by adding section 143.-1115, entitled "Determination of Physical

and Mental Fitness." Act of May 23, 1989, ch. 890, § 2, 1989 Tex.Gen.Laws 3899.[1] By its terms, section 143.1115 "provides the exclusive procedure for determining whether a fire fighter or police officer is sufficiently physically or mentally fit to continue the person's duties or assignment." § 143.1115(a).[2] Section 143.1115 applies only to a municipality having a population of 1.5 million or more; *i.e.,* the City of Houston. Tex.Loc.Gov't Code Ann. § 143.101. The court of appeals noted the adoption of section 143.1115, but decided that Order No. 4 was not inconsistent with the new, statutory procedure. 786 S.W.2d at 461.

■ Tyra argues that by enacting section 143.1115, the legislature has withdrawn the City's authority to create its own procedures to determine whether a fire fighter is sufficiently physically or mentally fit to continue to perform his or her duties or assignment. We agree.

Initially, we note that section 143.1115 does not prohibit a police or fire department from adopting programs for the purposes of routine training or skills assessment. Such programs may provide valuable, systematic exercises, thus promoting the Act's aim of "secur[ing] efficient fire and police departments composed of capable personnel." Tex.Loc.Gov't Code Ann. § 143.001(a).

Nor does section 143.1115 prohibit the suspension of a fire fighter or police officer who disobeys a rule or order requiring participation in such a program. The Act authorizes a local civil service commission to provide for removal or suspension of a fire fighter or police officer for "violation of an applicable fire or police department rule or special order." Tex.Loc.Gov't Code Ann. §§ 143.008(c), 143.051(12). The rule or order need only bear a reasonable relationship to the maintenance of an efficient fire fighting force. *Jackson v. Firemen's & Policemen's Civil Service Commission of Galveston,* 466 S.W.2d 412, 416 (Tex. 1971). Thus, a fire fighter may be suspended for violation of a fire department rule or order even though the underlying grounds for suspension are not specifically enumerated in the Act. *Jackson,* 466 S.W.2d at 416; *see also City of Sweetwater v. Geron,* 380 S.W.2d 550 (Tex.1964).

■ Section 143.1115 does, however, prohibit a fire or police department from suspending or terminating an officer for failing to pass a physical or mental fitness test

1. Although laws may not operate retroactively to impair vested substantive rights acquired under existing laws, changes in statutes affecting remedies or procedure may be applied retroactively. *Holder v. Wood,* 714 S.W.2d 318, 319 (Tex.1986); *Ex Parte Abell,* 613 S.W.2d 255, 260 (Tex.1981). In this case, section 143.1115 affects only the procedure by which Tyra's physical capabilities are evaluated. Thus, none of Tyra's substantive rights are impinged, and the retroactive application of section 143.1115 does not affect our evaluation of this case.

2. Specifically, the section prescribes the following steps:
   (b) On receiving a written order by the department head, a fire fighter or police officer shall submit to the commission a report from the person's personal physician, psychiatrist, or psychologist, as appropriate.
   (c) If the commission, the department head, or the fire fighter or police officer questions the report, the commission shall appoint a physician, psychiatrist, or psychologist, as appropriate, to examine the fire fighter or police officer and to submit a report to the commission, the department head, and the person.

   (d) If the report of the appointed physician, psychiatrist, or psychologist, as appropriate, disagrees with the report of the fire fighter's or police officer's personal physician, psychiatrist, or psychologist, as appropriate, the commission shall appoint an independent three-member board composed of a physician, a psychiatrist, and a psychologist or any combination, as appropriate, to examine the fire fighter or police officer. The board shall submit to the commission a written report of its finding regarding whether the fire fighter is sufficiently physically or mentally fit to continue the person's duties or assignment. The commission, at its next regularly scheduled meeting after the date it receives the report of the board, shall determine whether the fire fighter or police officer is sufficiently physically or mentally fit to continue the person's duties or assignment. The commission shall base its determination exclusively on the report of the board.
   Section 143.1115 further provides for division of costs, subsec. (e), and prohibits appointment to the review board of any person receiving other compensation from the city, subsec. (f).

by some procedure other than that set forth in the Act. Such a test would obviously thwart the legislature's express intent to establish "the exclusive procedure for determining whether a fire fighter or police officer is sufficiently physically or mentally fit to continue the person's duties or assignment." Tex.Loc.Gov't Code Ann. § 143.1115(a).

Order No. 4 provides a detailed procedure for determining whether a fire fighter is sufficiently physically fit to continue the person's duties or assignment. Section 6 of the order, entitled "Procedure," requires a fire fighter to meet certain blood pressure requirements before taking the test. Section 6 further describes a series of physical tasks which the fire fighter must perform within a prescribed time limit. For each task, the order lists "Physical Abilities Measured," such as leg strength, back strength, and cardiovascular endurance. The order also lists "Physical Abilities Required," such as grip, arm, and chest strength.[3] A fire fighter may fail the test twice without being suspended; but after the third failure, the officer administering the test is directed to "make a written recommendation to the Fire Chief for a *one (1) day (12 hours) suspension.*" (Emphasis in original.) The fourth and fifth failures result in recommendations of three-day and fifteen-day suspensions; and after the sixth failure, the administering officer "recommends to [the] Fire Chief that [the] firefighter be *indefinitely suspended.*" (Emphasis in original.)

The Texas Constitution prohibits a city from acting in a manner inconsistent with the general laws of the state. Tex. Const. art. XI, § 5. Thus, the legislature may, by general law, withdraw a particular subject from a home rule city's domain. *Glass v. Smith,* 150 Tex. 632, 637, 244 S.W.2d 645, 649 (1951). When it does so, the legislature must express its intent in clear and unmistakable language. *Id.,* 150 Tex. at 641, 244 S.W.2d at 652.

The language of section 143.1115 is both clear and unmistakable. By providing in that section the "exclusive procedure for determining whether a fire fighter or police officer is sufficiently physically or mentally fit to continue the person's duties or assignment," the legislature has withdrawn the City's authority to create its own procedures for that purpose.

The City does, of course, retain the authority to implement the statutory procedure. In so doing, the City may still devise and require performance tests like Order No. 4, but without the sanction of suspension for inadequate performance. A fire fighter who performs unsatisfactorily on a test may not be summarily suspended in disregard of the Act; rather, the fire fighter must be afforded the procedural safeguards specified in section 143.1115.

We conclude that the City can require fire fighters to perform the tests set out in Order No. 4, but cannot suspend or sanction fire fighters without complying with the procedural mechanism outlined in section 143.1115.[4] We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings in accordance with this opinion.

---

**3.** The physical demands of Order No. 4 apparently colored the City's perception of the fire fighters' complaints. In oral argument before this Court, counsel for the City announced, "In our office we refer to this case as the case of the fat firemen." Though apparently offered to belittle the fire fighter's complaints, the City's remark serves to confirm that Order No. 4 is indeed a test of physical fitness, and not a mere test of fire fighters' skills. Ignoring that fact, the dissent relays the disparaging comment without discussing its relevance to the issue presented; indeed, the dissent does not even attribute the remark to its source.

**4.** To avoid this result, the dissent takes a mystifying approach to legislative intent. The dissent

acknowledges that section 143.1115 was adopted for the specific purpose of correcting problems in Order no. 4. Nonetheless, the dissent concludes that section 143.1115 does not even apply to Order no. 4, and criticizes the court for applying the statute in the very manner the legislature contemplated. As we pointed out recently in *Lee v. City of Houston,* 807 S.W.2d 290, 293 (Tex.1991), the function of this court is not to question the wisdom of a statute; rather, we have determined the legislature's intent, we must apply the statute as written. *See Jones v. Del Ray Andersen and Associates,* 539 S.W.2d 348, 351 (Tex.1976).

GONZALEZ, Justice, dissenting.

This case is known in some quarters as the "fat firemen" case. The primary issue is whether state law prohibits the City of Houston from testing its fire fighters' capabilities to fight fires and then disciplining those who fail.[1] The majority holds that the City may test the fire fighters' skills but may not sanction the individuals who flunk the performance test. The court attributes this absurd result to the legislature's statutorily expressed will. In my opinion, the majority's view is not supported by logic, precedent, the applicable statute, or any legislative history. Thus, I dissent.

The City of Houston is a home rule city. The Constitution grants broad discretionary powers to home rule cities like Houston, subject to the limitation that city ordinances and orders not conflict with the Constitution and state statutes. TEX.CONST. ART. XI, § 5; *City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 (Tex.1990). Thus, this court should restrict a home rule city's local autonomy only if the legislature clearly and unmistakably intended to withdraw a particular subject from a home rule city's domain. *Lee v.*

1. The skills test examines the fire fighter's ability to carry a ladder, drag a hose, climb staircases, etc., within specified time limits. The sanctions range from one day suspension for a third-time failure to pass the skills test to an indefinite suspension after the sixth failure.

2. We stated in *San Marcos* that "[a] home rule city derives its power not from the Legislature but from Article XI, Section 5, of the Texas Constitution." 523 S.W.2d at 643. Home rule cities have "'full power of self-government, that is, full authority to do anything the legislature could theretofore have authorized them to do. The result is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers.'" 523 S.W.2d at 643 (quoting *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282, 286 (1948)). "The intention of the Legislature to impose such limitation must 'appear with unmistakable clarity.'" 523 S.W.2d at 645 (quoting *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex.1964)).

3. The test was patterned after one used by the City of San Diego, California. Regarding the test's careful preparation, the court of appeals noted that:

*City of Houston*, 807 S.W.2d 290, 302 (Tex. 1991) (Gonzalez, J., dissenting); *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex.1975); *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 649 (1951). The petitioners failed to meet this rigorous burden.[2]

When the legislature enacted the Municipal Civil Service chapter of the Local Government Code, it stated that the chapter's purpose was:

> to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants.

TEX.LOC.GOV'T CODE § 143.001.

Under this authority, the Houston City Council empowered the Houston Fire Department to provide fire protection to the residents of the City. Following this directive, the Fire Chief, in active consultation with other firemen and management staff, formulated a test to determine whether individual fire fighters could perform the strenuous tasks required to fight fires. This sensible response to the Local Government Code's stated purpose caused the controversy now before the court.[3]

> There was evidence that considerable time, thought, analysis, debate and judgment went into the selection of a time limitation for performing the tasks related to Order No. 4.
> There was testimony to show a reasonable amount of time would be between 5 minutes and 8 minutes, including the testimony of Fire Chief Clayton who observed that the most critical time at the scene of a typical fire is the first five minutes after firefighters arrive.
> To aid in the selection of the time standard ultimately chosen, a cross-section of about 100 firemen of all ages, job descriptions and longevity with the fire department were tested on the eight evolutions. Statistics were assembled from that sampling after deleting data related to the slowest 10 percent of the participants as well as the fastest 10 percent. The score at the mid point of the remaining array of scores was 5 minutes and 14 seconds. The simple average was 5 minutes and 30 seconds. The standard was finally set at 5 minutes and 15 seconds, plus an added allowance for each participant of one second for each year of past service with the Houston Fire department.
> 786 S.W.2d 457, 459.

Several fire fighters, including Tyra, challenged the performance skills tests and sought a permanent injunction asserting that, among other things, they placed fire fighters in substantial risk of physical injury, and that the order was an attempt to circumvent the civil service laws of Texas. The pleadings *did not* contest the skills test's time limits within which the tasks would have to be completed to pass.

Nonetheless, after a hearing, the trial court found the time limitation of five minutes and seventeen seconds arbitrary and unreasonable and stated in the judgment that "seven to eight minutes would be a reasonable time limitation for the test as outlined." Thus, the trial court permanently enjoined the City from implementing the tests and their respective disciplinary procedures. The court of appeals reversed the judgment of the trial court, holding that a court has no right to substitute its judgment for that of the governing body upon which the law places the primary power and duty to act. The court found no evidence that the City acted illegally, unreasonably, or arbitrarily, and thus dissolved the injunction.

This court now reverses the judgment of the court of appeals and remands this case to the trial court, holding that the legislature mandated that the City must consult a physician, psychiatrist, or psychologist before disciplining its fire fighters who fail the skills test. The court concludes that if a fire fighter fails to perform the skills test within the time limits established by the City, then the City must obtain an independent medical opinion validating the fire fighter's failure before the City can impose disciplinary action. It makes no sense to hold that the City may devise and require the tests but cannot enforce them. There is no logical reason to consult a medical professional to confirm an objective, non-

medical fact before imposing disciplinary action.

The exclusive procedure for physical or mental fitness required by the statute refers to the exclusive procedure for *medical* determinations only. That is why medical professionals are required in those situations. But they are not required to confirm the City's application of non-medical performance standards. The majority concedes that the City has the authority to establish skills standards. However, the court's interpretation of the statute prevents the Fire Chief and his or her management team from enforcing these standards unless an unfamiliar outsider (i.e., physician, psychiatrist or psychologist) gives his or her stamp of approval. The logic of this approach escapes me.[4]

While this case was pending in the court of appeals, the legislature amended the Local Government Code to add § 143.1115, cited in the majority opinion. Majority Opinion at 626–27. Tyra testified before the Senate Subcommittee considering the bill and explained that the intent and purpose of the proposed legislation was to correct an inequity that was discovered in Houston's fire fighter testing program. Tyra explained that: "Therefore, by setting a physical medical standard [the blood pressure test] rather than a physical agility standard, we felt like this would discriminate.... Therefore we came up with a solution [that] would be to have an independent board of physicians to determine the physical-*medical* physical fitness of an individual rather than physical ability." (emphasis added).

Additionally, Tyra was questioned about how this procedure would function under the amended legislation:

*Senator:* [P]hysical fitness is of great concern not only to the individual fireman, but to his associate that's with him. It's a joint risk situation, and therefore,

---

4. In essence, the majority is saying that medical professionals, by virtue of their special training, should be consulted on medical issues before imposing any disciplinary actions. The majority then extends this analysis to say that although the City has specialized knowledge regarding skills standards and has the authority to devise and require performance tests, *medical profes-* *sionals* nevertheless should be consulted regarding the particular application of the performance/skills standards before imposing disciplinary action. This analytical extension is patently erroneous and it is another example of court-ordered bureaucratic micro management at its worst.

there has to be some standards of physical fitness.... I don't know [if] they [physicians] know a lot about fighting fires necessarily, and they might just say "this guy's pretty good." I'd pass a physical, but I sure couldn't be a fire fighter.... I don't see any other stop sign here, other than that he goes out and has his doctor say he's O.K.

*Tyra:* Well, we have to separate the two issues first. Physical wellness, which is a physical training program, is certainly available to the City or the fire chief to implement. What we are concerned about is the **medical** condition of the individual. That is this—the current law allows the fire chief to determine the medical condition of the individual—if he's fit to work in the fire department.... **This [legislation] takes the medical determination away from the chief and puts it in an independent board of physicians** to determine the physical *medical* end of it rather than physical wellness, which would be attributed to a physical ability program. (emphasis added).

*Determination of Physical and Mental Fitness Act: Hearings on Tex.S.B. 268 Before the Senate Comm. on Intergovernmental Relations,* 71st Leg. (Feb 28, 1989) (public hearing).

Thus, the purpose of this legislation was to require medical professionals to make *medical* determinations regarding medical disabilities of fire fighters. There is nothing in the text of the amendment or its legislative history to support the notion that the legislature in "clear and unmistakable language" intended to require medical professionals to make non-medical determinations regarding the skills required to perform the job of a professional fire fighter. Section 143.1115 of the Local Government Code clearly reserves these determinations for the City. If the City has the authority to require performance standards, why then is it prevented from enforcing these standards? The short answer is that the legislature did not, in clear and unmistakable language, prevent the City from enforcing its skills test, and that the majority inexplicably has disregarded well established standards of statutory construction.

Applying the bifurcated standard articulated above to the case at bar, the City cannot invoke disciplinary actions for the failure to meet blood pressure standards. Setting a blood pressure standard would involve a medical determination, and therefore, the City must consult a medical professional before disciplining a fire fighter for failing to pass the blood pressure test. However, any non-medical job performance/skills determinations are left to the discretion of those with specialized knowledge (e.g., Fire Chiefs). The City can discipline a fire fighter for failing a practical skills test and need not consult medical professionals before doing so.

This straightforward interpretation of the statute provides the only logical approach. The legislation requires those with specialized knowledge to make determinations before imposing disciplinary procedures. The statute provides further that the *exclusive* remedy for determining whether a fire fighter or police officer is *medically* fit to perform duties rests with medical professionals. There is no logical reason for extending this remedial procedure to objective situations which do not require knowledge of medical professionals. Thus, in my opinion, the court of appeals correctly held that Order No. 4 was consistent with § 143.1115 of the Local Government Code. 786 S.W.2d 457 at 461. At the very minimum, the new legislation is ambiguous, indefinite and uncertain. Since we are dealing with a home rule city that derives its power not from the legislature but from Article XI, § 5 of the Texas Constitution, this ambiguity should be resolved in the city's favor. In light of this and in the face of clear precedent, for the court to now hold that the legislature "with unmistakable clarity" preempted this field is beyond me.

I have other difficulties with the majority opinion. This is an appeal from the granting of a permanent injunction. The court of appeals dissolved the injunction, because it found that there was no evidence that Order No. 4 was illegal, unreasonable, or arbitrary. *Id.* The standard of review in an appeal from a permanent injunction is whether a clear abuse of discretion occurred. *Priest v. Texas Animal Health*

*Comm'n.,* 780 S.W.2d 874, 875–876 (Tex. App.—Dallas 1989, no writ).[5] If we determine that the trial court abused its discretion, we should affirm the judgment of the court of appeals. If not, the proper disposition is to reverse the judgment of the court of appeals and reinstate the injunction. I do not understand why the majority deviates from this well established standard of review, and chooses instead to *remand* this case to the trial court for "further proceedings in accordance with this opinion." Majority opinion at 628. The court leaves the trial court and the parties completely in the dark, just as it did in *Lee v. City of Houston,* 807 S.W.2d 290 (Tex. 1991).[6] Is the trial court now authorized to make a ruling based on the record before it? Must the parties re-plead, and if so, can the parties present new evidence?

I am further troubled by the court's retroactive application of a vague statute enacted *after* this case was tried. The majority reasons that it is proper to apply the new statute retroactively because it affects only "procedure" and not "substantive rights," and because its meaning "is clear and unmistakable." Majority opinion at 627, n. 1 & 628. If Order No. 4 clearly and unmistakably conflicts with the new statute, then why remand this cause to the trial court? Additionally, if Order No. 4 only affects procedure, how do the petitioners establish irreparable harm, which is a necessary element for an injunction? Today's opinion does not provide a clear and convincing answer; instead, it leaves us with an unconvincing conclusion and many new questions.

HECHT and CORNYN, JJ., join this opinion.

---

5. *See also* W. Wendell Hall, *Standards of Appellate Review in Civil Appeals,* 21 St. Mary's L.J. 865, 876. (1990).

6. On remand of *Lee,* the trial court issued a final judgment which states:

"The Defendants's use of unclassified employees in the nine positions at issue in this case violated Section 143.021(c) of the Texas Local Government Code. Such positions must be filled in accordance with the terms of such statute."

Lee filed a writ of mandamus with the Supreme Court asserting that the trial court had misinterpreted our mandate. This matter is pending in our court. D–1439, *Lee, et al v. The Honorable Dan Downey.*