Anthony JACKSON and James Nuñez, Appellants,

v.

**CITY OF TEXAS CITY and Debbie Lesco, City Civil Service Director, Appellees.**

No. 01–07–00026–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 24, 2008.

---

**642**

B. Craig Deats, Deats Durst Owen & Levy, PLLC, Austin, TX, for Appellants.

Julia J. Gannaway, Bettye Lynn, Lynn, Pham & Ross, LLP, Fort Worth, TX, for Appellees.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

Appellants Anthony R. Jackson and James Nuñez filed suit against the City of Texas City and Debbie Lesco, in her capacity as city civil service director, (collectively, Texas City) seeking declaratory and injunctive relief related to their dismissal from the fire department. Jackson and Nuñez alleged that Texas City violated their rights to appeal their dismissals under the Civil Service Act (the "Act"). In three issues, Jackson and Nuñez argue that the trial court erred in granting Texas City's plea to the jurisdiction.

We affirm.

## Background

Jackson and Nuñez began working for the Texas City Fire Department (TCFD) in June 2001 and October 2001, respectively. Both Jackson and Nuñez signed a document entitled "Conditions of Employment," which was adopted under the terms of a collective bargaining agreement between TCFD and Texas City. The document stated, in part:

> It is understood that each Civil Service employee hired after January 1, 2000, will be required to be EMT (Emergency Medical Technician) certified at the basic level or will be detailed to attend EMT (Emergency Medical Technician) training to become certified at the basic level. It is understood that each Civil Service employee hired after January 1, 2000, may be required to be EMT (Emergency Medical Technician) certified at the paramedic level or will be detailed to attend EMT (Emergency Medical Technician) training to become certified at the paramedic level at some time during their employment with the department.... Upon receiving State Certification, each employee is to comply

with and fulfill all existing and future requirements of the Texas Department of Health to maintain their level of certification. Furthermore[,] each employee with a basic EMT or paramedic level of certification is to comply with and fulfill all existing and future requirements of the Texas City Fire Department and/or Medical Director.

Following this paragraph, the document stated, "It is understood that failure to satisfactorily complete the EMT Basic or Paramedic training and qualify for State Certification and maintain certification at a level established by the department constitutes cause for disciplinary action up to and including termination of the employee." (original in boldface type).

Jackson and Nuñez successfully completed their probationary period and became non-probationary employees of TCFD in 2002. In 2005, the TCFD fire chief assigned both Jackson and Nuñez to attend EMT training and to become certified as EMTs at the paramedic level. Jackson and Nuñez attended the required training classes, but neither was able to pass the training class or sit for the certification exam. In 2006, the fire chief terminated Jackson's and Nuñez's employment with the TCFD via letter.[1] Despite the fact that the fire chief's letters did not inform them of a right to appeal, both Jackson and Nuñez attempted to appeal their terminations with the Texas City Civil Service Commission, requesting that

their appeals be heard by an independent third-party hearing examiner pursuant to section 143.057 of the Act.[2] The civil service director notified both men by letter that they were not eligible to appeal their discharges to a hearing examiner because their discharges had been labeled as non-disciplinary.[3] Neither the civil service commission nor a hearing examiner issued any decision with regard to Jackson's and Nuñez's appeals.

Jackson and Nuñez filed suit on August 11, 2006, requesting that the trial court issue a declaratory judgment that Texas City had violated their rights under the Act and that it enjoin Texas City from discharging them without utilizing the procedures mandated in the Act. Jackson and Nuñez also requested a writ of mandamus directing Texas City to comply immediately with the Act by processing their appeals before a third party hearing examiner. Texas City filed a plea to the jurisdiction, and the trial court held a hearing on November 15, 2006.

In its motion to dismiss for lack of jurisdiction, Texas City made three arguments. First, Texas City argued that Jackson and Nuñez failed to state a justiciable claim because the provisions of the Act did not apply to their discharges. Second, Texas City argued that Jackson's and Nuñez's claims were disguised claims for money damages for which Texas City's governmental immunity had not been waived.

1. Jackson and Nuñez received their termination letters in April 2006 and June 2006, respectively. The fire chief offered Nuñez conditional reinstatement if he would agree to take an "educational leave of absence" without pay for eight months, obtain paramedic certification during that time at his own expense, repurchase uniforms, and agree to waive all appeal rights if he were unsuccessful in obtaining the required paramedic certification. Nuñez declined this offer and his discharge took effect in June 2006.

2. *See* TEX. LOC. GOV'T CODE ANN. § 143.057 (Vernon 2008).

3. Jackson's letter to the civil service director was dated April 20, 2006, and he received a reply letter dated May 10, 2006. Nuñez's letter to the civil service director was dated June 29, 2006, and he received a reply letter dated July 5, 2006.

Third, Texas City argued that the trial court did not have jurisdiction over Jackson's and Nuñez's claims because they failed to file suit within ten days after the civil service director refused to accept and process their appeals. On December 4, 2006, the trial court issued an order granting Texas City's plea to the jurisdiction and dismissing Jackson's and Nuñez's case. Jackson and Nuñez appeal from this order.

## Jurisdiction

### A. *Standard of Review*

 A plea to the jurisdiction is a dilatory plea, and its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the pleaded cause of action. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). A court always has jurisdiction to determine its jurisdiction. *Dolenz v. Vail*, 200 S.W.3d 338, 341 (Tex.App.–Dallas 2006, no pet.) (citing *Camacho v. Samaniego*, 831 S.W.2d 804, 809 (Tex.1992)).

 We review de novo a trial court's ruling on a plea to the jurisdiction because subject matter jurisdiction is a question of law. *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). In determining whether jurisdiction exists, rather than looking at the claim's merits, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader. *Cantu v. Perales*, 97 S.W.3d 861, 862–63 (Tex.App.–Corpus Christi 2003, no pet.) (citing *Brown*, 80 S.W.3d at 555). We may also consider evidence necessary to resolve the jurisdictional issues raised. *Id.* (citing *Brown*, 80 S.W.3d at 555; *Blue*, 34 S.W.3d at 555). An appellant must attack all inde-

pendent grounds that support the trial court's ruling. *Britton v. Texas Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.–Houston [1st Dist.] 2002, no pet.). If the pleading affirmatively negates the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Cantu*, 97 S.W.3d at 863 (citing *Brown*, 80 S.W.3d at 555).

### B. *Application of Act to Jackson's and Nuñez's Terminations*

The threshold question necessary to determine the trial court's jurisdiction over this case is whether Jackson's and Nuñez's terminations for failure to maintain the required level of EMT certification were subject to the suspension and termination procedures in the Act, found in Chapter 143 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.001– .363 (Vernon 2008).

1. *Termination provisions of TCFD's and Texas City's collective bargaining agreement and the Act*

Jackson and Nuñez argue that their terminations were disciplinary suspensions subject to the procedures outlined in sections 143.052, 143.053, and 143.057 of the Act and that they were entitled by the Act to appeal their suspensions to the Civil Service Commission or to an independent hearing examiner. Texas City, however, argues that Jackson and Nuñez were terminated for failure to fulfill the conditions of their employment with TCFD pursuant to the collective bargaining agreement between TCFD and Texas City, and that their terminations were, therefore, not subject to the Act's procedures.

The Texas Local Government Code grants cities and labor representatives the authority to modify civil service requirements by collective bargaining agreement.

See *id.* § 174.006 (Vernon 2008). Section 174.006 also states that the Act's provisions prevail over a collective bargaining agreement "unless the collective bargaining contract specifically provides otherwise." *Id.* § 174.006(a).

Texas City and TCFD's labor representatives entered into a collective bargaining agreement that gave Texas City the authority "to determine and establish pre-employment employee qualifications, standards, and/or terms and conditions of employment." Jackson and Nuñez signed the "Conditions of Employment" agreement as adopted by Texas City pursuant to the collective bargaining agreement. The document they signed set out the conditions of their employment with TCFD, including the requirement that they be certified as EMTs, and it provided for "disciplinary action" if a non-probationary employee violated the conditions.

The Conditions of Employment agreement expressly provides that failure of an employee "to satisfactorily complete the EMT Basic or Paramedic training and qualify for State Certification and maintain certification at a level established by the department constitutes cause for disciplinary action up to and including termination of the employee." Nothing in the Conditions of Employment signed by Jackson and Nuñez made any statement that discharges for failure to meet the conditions of employment would be subject to the Act's procedures. Jackson and Nuñez were terminated in accordance with the terms of the Conditions of Employment, which provided for disciplinary action up to and including termination, but did not specifically refer to disciplinary action under the Act.

Jackson and Nuñez argue that the Conditions of Employment agreement adopted pursuant to the collective bargaining agreement specifically states that failure

to satisfactorily complete EMT training and maintain certification "constitutes cause for disciplinary action" and that the terms of the agreement do not specifically provide that they prevail over the Act's provisions governing the suspension and termination of fire fighters. *See id.* § 174.006(a) (Vernon 2008). Therefore, they argue, the Act's provisions do prevail over the provisions in the collective bargaining agreement. They contend that, rather than classifying their dismissals as "non-disciplinary," the fire chief should have classified their failure to attain the proper EMT certification as "incompetence" or "shirking of their duty," thereby subjecting them to disciplinary suspensions under subsection 143.051(3) or 143.051(11) of the Act. They also argue that the Conditions of Employment agreements should be considered a special order of the City of Texas City, and, therefore, their failure to attain the required level of EMT certification violated subsection 143.051(12) of the Civil Service Agreement.

Section 143.052 of the Act, entitled "Disciplinary Suspensions," provides, "The head of the fire or police department may suspend a fire fighter or police officer under the department head's supervision or jurisdiction for the violation of a civil service rule." *Id.* § 143.052(b) (Vernon 2008). Section 143.052 also provides the procedure a department head must follow when making such a suspension, and it states, "The copy of the written statement must inform the suspended fire fighter or police officer that if the person wants to appeal to the commission, the person must file a written appeal with the commission within 10 days after the date the person receives the copy of the statement." *Id.* § 143.052(d).

Section 143.051 of the Act lists the grounds for disciplinary removal that are covered by the Act's procedural require-

ments. *Id.* § 143.051 (Vernon 2008). Section 143.051 states:

A commission rule prescribing cause for removal or suspension of a fire fighter or police officer is not valid unless it involves one or more of the following grounds:

(1) conviction of a felony or other crime involving moral turpitude;

(2) violations of a municipal charter provision;

(3) acts of incompetency;

(4) neglect of duty;

(5) discourtesy to the public or to a fellow employee while the fire fighter or police officer is in the line of duty;

(6) acts showing lack of good moral character;

(7) drinking intoxicants while on duty or intoxication while off duty;

(8) conduct prejudicial to good order;

(9) refusal or neglect to pay just debts;

(10) absence without leave;

(11) shirking duty or cowardice at fires, if applicable; or

(12) violation of an applicable fire or police department rule or special order.

*Id.*

The Texas Supreme Court has held that the Act applies only to the types of terminations specifically enumerated in the Act, not to all types of terminations. *See City of Sweetwater v. Geron,* 380 S.W.2d 550, 553 (Tex.1964) ("While the disciplinary causes for discharge set out in said section are exclusive in so far as the Civil Service Commission has power to dismiss, the Act does not prevent the City from legislating in other fields which may cause the dismissal of employees."). The question, therefore, is whether Jackson's and Nuñez's terminations were within the scope of the Act or whether termination under the terms of the Conditions of Employment adopted pursuant to the collective bargaining agreement is outside the scope of the Act.

2. *Applicability of the Civil Service Act to Jackson's and Nuñez's terminations*

■ We disagree with Jackson's and Nuñez's argument that the Conditions of Employment agreement required Texas City to follow the procedural provisions of the Act. Section 174.006 of the Texas Local Government Code clearly gave Texas City and TCFD the authority to modify civil service requirements by a collective bargaining agreement. *See* TEX. LOC. GOV'T CODE ANN. § 174.006. Under section 174.006, the Act's provisions do not prevail over collective bargaining agreements when the agreement "specifically provides otherwise." *Id.* § 174.006(a). Here, it did. Texas City clearly did not intend for termination for failure to attain the proper EMT certification to be added to the list of disciplinary acts in section 143.051 of the Act. Furthermore, Texas courts have upheld the right of cities to terminate employees for reasons that fall outside the scope of the Act. *See Geron,* 380 S.W.2d at 553; *see also Grote v. City of Mesquite,* No. 05–98–01367–CV, 2001 WL 180260, at *3 (Tex.App.–Dallas Feb. 26, 2001, pet. denied) (not designated for publication). We hold that Jackson's and Nuñez's terminations do not fall within the scope of the Act, and therefore the procedural requirements for disciplinary suspensions in section 143.052 of the Act do not apply to them.

We likewise disagree with Jackson's and Nuñez's argument that the fire chief should have classified their dismissals as incompetence or shirking of their duty and were, therefore, within the scope of disciplinary suspensions under subsection

143.051(3) or 143.051(11) of the Act. *See* Tex. Loc. Gov't Code Ann. §§ 143.051(3), (11). The evidence here demonstrates that neither Jackson nor Nuñez committed a specific act of incompetency that caused him to be dismissed. *See id.* § 87.011(2) (Vernon 2008) (defining incompetency in context of removing county officers as "gross ignorance of official duties[,] gross carelessness in the discharge of those duties[,] or unfitness or inability to promptly and properly discharge official duties because of a serious physical or mental defect that did not exist at the time of the officer's election."). Nor do the facts support the conclusion that either Jackson or Nuñez was terminated on the grounds of "shirking duty or cowardice at fires." *See id.* § 143.051(11).

■ We also disagree with Jackson's and Nuñez's claim that the Conditions of Employment agreement should be considered a special order of Texas City so that their failure to attain the required level of EMT certification violated subsection 143.051(12) of the Act.[4] *See id.* § 143.051(12). Failure to qualify for state certification as an EMT was not a specific act of misconduct that violated a rule or order—it was a failure to meet the con-

tractually agreed upon conditions of employment as a fire fighter. *See Geron,* 380 S.W.2d at 552–53 (holding that section 143.051's predecessor was "descriptive of specific acts of misconduct for which an employee may be suspended or discharged" and recognizing that Act does not prevent city from terminating employees for other reasons); *see also Grote,* 2001 WL 180260, at *3 (holding that failure to qualify as EMT was not act of misconduct or violation under section 143.051 of Act, but was failure to meet specific condition of employment).

Jackson and Nuñez were not terminated for any of the reasons enumerated in section 143.051 as being subject to the Act's procedures outlined in section 143.052. Rather, Jackson and Nuñez were terminated for failure to fulfill their conditions of employment under the provisions of the Conditions of Employment agreements they both signed when they were first employed by TCFD.

### C. *Jackson's and Nuñez's Right to Appeal*

■ Jackson and Nuñez also argue that they were entitled to an appeal of their terminations as provided under sec-

---

4. A "fire or police department rule or special order" is a written rule or order officially issued by a police or fire department for the purpose of maintaining an efficient police or fire fighting force. *See Tyra v. City of Houston,* 822 S.W.2d 626, 627 (Tex.1991) (discussing Houston Fire Department's "Department Order No. 4" requiring all personnel to take fitness test); *see also City of Dallas v. Cox,* 793 S.W.2d 701, 707 (Tex.App.–Dallas 1990, no writ) (discussing Dallas Police Chief's Special Orders on the department's deadly force policy); *Firemen's and Policemen's Civil Serv. Comm'n for Corpus Christi v. Campbell,* 616 S.W.2d 424, 425 (Tex.App.–Houston [1st Dist.] 1981, no writ) (discussing fire chief's order requiring firefighters to wear specific uniform when exercising on duty); *Vick v. City of Waco,* 614 S.W.2d 861, 863 (Tex.App.–

Waco 1981, writ ref'd n.r.e.) (discussing Police Department General Order 79–8, 111–A3, which stated that "Personnel are required to adhere to strict obedience of all Federal, State, and local laws and ordinances, along with Departmental rules, orders, and regulations"). Jackson and Nuñez were terminated under the terms of a contract adopted for use by the fire department pursuant to the collective bargaining agreement permitted by section 174.006 of the Texas Local Government Code. Jackson and Nuñez each signed this contract, which was called Conditions of Employment. A contract adopted pursuant to a collective bargaining agreement between a fire or police department and a municipality is not a "rule or special order" of the department.

tions 143.053 and 143.057 of the Act. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.053, 143.057. The Act provides for administrative appeal of only those disciplinary actions that are specifically enumerated. *Id.* § 143.010(a) (Vernon 2008); *Corbitt v. City of Temple*, 941 S.W.2d 354, 355 (Tex.App.–Austin 1997, writ denied) ("The statute does not provide for administrative appeal of every possible disciplinary action taken by the Chief, only those that are specifically enumerated."). The Act provides the civil service commission and hearing examiners with the jurisdiction to hear appeals only from promotional examinations, disciplinary suspensions, and demotions. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.034, 143.051, 143.052, 143.053, 143.054, 143.057 (Vernon 2008); *Corbitt*, 941 S.W.2d at 355.

Jackson's and Nuñez's dismissals for failure to fulfill the conditions of employment do not fall under any of the specifically enumerated actions for which the Act provides a right to administrative appeal. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.034, 143.051, 143.053, 143.054, 143.057.[5] Specifically, Jackson and Nuñez were not terminated for committing any of the acts enu-

---

**5.** Section 143.034 of the Act, entitled "Review and Appeal of Promotional Examination," provides, in part:

> On request, each eligible promotional candidate from the fire or police department is entitled to examine the person's promotional examination and answers, the examination grading, and the source material for the examination. If dissatisfied, the candidate may appeal, within five business days, to the commission for review in accordance with this chapter.

TEX. LOC. GOV'T CODE ANN. § 143.034(a) (Vernon 2008).

Section 143.052 of the Act, entitled "Disciplinary Suspensions," indicates that employees subject to disciplinary suspension due to a violation under section 143.051 must receive notice of their right to appeal. *Id.* § 143.052(d) (Vernon 2008). Section 143.053 of the Act, titled "Appeal of Disciplinary Suspension," provides, "If a suspended fire fighter or police officer appeals the suspension to the commission, the commission shall hold a hearing and render a decision in writing within 30 days after the date it received notice of the appeal." *Id.* § 143.053(b) (Vernon 2008). Section 143.053 also provides information that must be contained in the commission's written decision, *see id.* § 143.053(e), and states that "[t]he commission may suspend or dismiss a fire fighter or police officer only for violation of civil service rules and only after a finding by the commission of the truth of specific charges against the fire fighter or police officer." *Id.* § 143.053(g). Section 143.054 of the Act, entitled "Demotions," provides:

> (a) If the head of the fire or police department wants a fire fighter or police officer under his supervision or jurisdiction to be involuntarily demoted, the department head may recommend in writing to the commission that the commission demote the fire fighter or police officer....
>
> ...
>
> (c) The commission may refuse to grant the request for demotion. If the commission believes that probable cause exists for ordering the demotion, the commission shall give the fire fighter or police officer written notice to appear before the commission for a public hearing....
>
> (d) The fire fighter or police officer is entitled to a full and complete public hearing, and the commission may not demote a fire fighter or police officer without that public hearing.
>
> (e) A voluntary demotion in which the fire fighter or police officer has accepted the terms of the demotion in writing is not subject to this section.

*Id.* § 143.054 (Vernon 2008).

Section 143.057 of the Act, entitled "Hearing Examiners," establishes the procedures for appeal to a hearing examiner. *Id.* § 143.057 (Vernon 2008). Section 143.057 provides, "[I]n an appeal of an indefinite suspension, a suspension, a promotional bypass, or a recommended demotion, the appealing fire fighter or police officer may elect to appeal to an independent third party hearing examiner instead of to the commission." *Id.* § 143.057(a).

merated in section 143.051 of the Act as grounds for disciplinary suspension. *See id.* § 143.051. Nor were they passed over for a promotion or demoted. *See id.* §§ 143.034, 143.054. Therefore, the civil service commission was under no obligation to hold a hearing and to review the fire chief's action in terminating them. *See Cantu,* 97 S.W.3d at 863 (holding that "[b]ecause appellee was neither passed on a promotion, suspended, or demoted, the Commission was under no obligation to hold a hearing" when fire fighter was seeking civil service review of his resignation that was allegedly made under duress).

We conclude that Jackson and Nuñez have failed to state a justiciable claim for relief because the Act does not apply to their terminations. Rather, their petition affirmatively negates the existence of jurisdiction. Therefore, the trial court did not err in granting Texas City's plea to the jurisdiction.[6] *See Cantu,* 97 S.W.3d at 863; *Brown,* 80 S.W.3d at 555. Because the trial court's ruling is upheld based on the grounds that Jackson and Nuñez failed to state a justiciable claim, we do not need to address the other grounds that could have supported the trial court's order. *See Britton,* 95 S.W.3d at 681.

### Conclusion

We affirm the order of the trial court.

Justice ALCALA, dissenting.

---

**6.** Jackson and Nuñez also argue that the trial court had jurisdiction over their case because their termination violated a vested property right. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 397 (Tex.2000) (holding that trial courts possess jurisdiction to grant judicial review of agency action only when provided for by statute or when agency action "adversely affects a vested property right or otherwise violates a constitutional right"). Jackson and Nuñez cite *City of Amarillo v. Hancock* to support their

ELSA ALCALA, Justice, dissenting.

I respectfully dissent. The majority opinion deprives fire fighters of the procedural protections given to them by the legislature under the Civil Service Act ("the Act"). *See* TEX. LOC. GOV'T CODE ANN. §§ 143.001–.363 (Vernon 2008). Fire fighters Anthony Jackson and James Nunez were terminated for not complying with the Emergency Medical Technician (EMT) requirements described in their employment agreements, and seek the right to appeal guaranteed by the Act, which gives fire fighters the right to challenge terminations that result from discipline. *See City of Sweetwater v. Geron,* 380 S.W.2d 550, 552–53 (Tex.1964) ("[T]he State has pre-empted the field for removal of firemen and policemen for disciplinary reasons.").

The majority opinion declines to give fire fighters Jackson and Nunez the right to appeal their terminations because it contends they were terminated for failing to abide by the terms of the employment contract entered through collective bargaining. The majority opinion is erroneous in this determination, for three reasons.

First, the majority opinion contends the terminations are for non-disciplinary reasons because the discharges are for failing to abide by the terms of the employment contract. Each of the employment contracts states, "It is understood that failure

---

contention. 150 Tex. 231, 239 S.W.2d 788, 790–92 (1951). However, the *Hancock* court squarely held that Hancock, a fire fighter attempting to contest his demotion from captain to driver, did not have a property interest in his position. *Id.* at 792 ("[A] captaincy in the [fire department] is not property and the right to it is not a property right protected by due process. Consequently, there is no inherent right to a judicial review of an order of demotion by the Civil Service Commission duly entered after proper procedure.").

to satisfactorily complete the EMT Basic or Paramedic training and qualify for State Certification ... constitute cause for disciplinary action up to and including termination of the employee." Thus, the terms of each of the employment agreements provide that termination for failure to abide by the EMT requirements is considered "disciplinary action." Because the applicable employment agreements describe the terminations as discipline, the majority opinion errs by ignoring the terms of the agreements in its decision to call the terminations non-disciplinary actions. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.001–.363 (Vernon 2008).

Second, the grounds for termination of Jackson and Nunez plainly fall within the Act, which applies to terminations for acts of incompetency or neglect of duty. *See* TEX. LOC. GOV'T CODE ANN. § 143.051 (Vernon 2008) ("A commission rule prescribing cause for removal or suspension of a fire fighter or police officer is not valid unless it involves ... (3) acts of incompetency; [or] (4) neglect of duty...."). The terminations of Jackson and Nunez were for acts that fall within the categories of incompetency or neglect of duty, in that they were incompetent by failing to meet the required EMT requirements as those requirements were set out in the "Conditions of Employment" or they neglected their duty to meet the required EMT requirements as those requirements were set out in the "Conditions of Employment." Thus, the majority opinion errs by stating that the failure to meet the EMT requirements constitutes only a violation of the employment agreement and is not also a violation to which the Act applies. Because the terminations of Jackson and Nunez were for acts properly classified as acts of incompetency or neglect of duty, the Act applies. *See id.*

Third, the majority opinion errs in its assessment that the Act's requirements are inapplicable because the agreements fail to mention the Act. Under the Act, the provisions of the Act prevail over a collective bargaining agreement "unless the collective bargaining contract specifically provides otherwise." *See* TEX. LOC. GOV'T CODE ANN. § 174.006(a) (Vernon 2008). The collective bargaining agreements here do not specifically provide that the Act is inapplicable. *See id.* Because the agreements here fail to specifically provide that the Act does not apply, the Act necessarily applies since its provisions "prevail over a collective bargaining agreement." *See id.*

Here, the Act applies because (1) the terminations were undisputedly discipline; (2) the discipline was for matters of incompetence or neglect of duty; and (3) the employment agreements fail to state that the Act is inapplicable. The majority opinion errs by its determination that the Act is inapplicable and by refusing to give the firefighters the procedural protections to which they are entitled under the Act. All that the firefighters want at this juncture is the procedural right given to them by the legislature, which is the right to have a civil service review of their terminations. It is not for us or the trial court to determine whether their terminations were actually proper. I conclude that the trial court erred by dismissing the claims filed by Jackson and Nunez. I would reverse the trial court's order and remand to the trial court for further proceedings.